In re William Herbert HUNT and Nancy Jane Broaddus Hunt, Debtors.

In re WILLIAM HERBERT HUNT TRUST ESTATE, Debtors.

William D. WALTERS, Sr. and Imperial Oil of North Dakota, Inc., Plaintiffs,

v.

William Herbert HUNT and William Herbert Hunt Trust Estate, Defendants.

Bankruptcy Nos. 386–33421–HCA–11, 388–35725–HCA–11.
Adv. No. 390–3211.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Sept. 14, 1992.

Albert G. McGrath, Jr., Holmes Millard & Duncan, P.C., Dallas, Tex., for William Herbert Hunt Trust Estate.

Roger J. Magnuson, Dorsey & Whitney, Minneapolis, Minn., for plaintiffs.

Michael P. Gibson, Burleson, Pate & Gibson, L.L.P., Dallas, Tex., for debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD C. ABRAMSON, Bankruptcy Judge.

On April 9, 1990, Plaintiffs filed the above-styled adversary proceeding against William Herbert Hunt and the William Herbert Hunt Trust Estate seeking a determination that their alleged claims were not discharged pursuant to section 523(a)(3) of the Code because they had no notice of Hunt's bankruptcy proceeding. Plaintiffs also seek permission to amend their Complaint to request leave of this Court to file a late proof of claim against the William Herbert Hunt Trust Estate. The Court finds initially that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O).

### FINDINGS OF FACT

On August 29, 1986, the William Herbert Hunt Trust Estate (the "WHHTE") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). The bar date for filing proofs of claims in the WHHTE proceeding was February 18, 1987. On September 16, 1988, the Court confirmed the WHHTE's plan of reorganization.

On September 21, 1988, William Herbert Hunt ("Hunt") filed a voluntary petition for relief under Chapter 11 of the Code. On October 17, 1988, the Court entered an Order Establishing Bar Date and Prescribing Notice (the "Notice Order"). The Notice Order required Hunt to publish notice of his bankruptcy proceeding in various periodicals "[d]ue to the fact that certain creditors may not at this time be known by the Debtors ... publication notice is required as a supplement to mail notice in

order to meet the due process requirements as set forth in *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306 [70 S.Ct. 652, 94 L.Ed. 865] (1950)."

Pursuant to the Notice Order, notice of Hunt's bankruptcy proceeding was published in such periodicals as the *Wall Street Journal,* the *New York Times,* the *Chicago Tribune,* the *Los Angeles Times,* the *Dallas Morning News,* and the *Dallas Times Herald.* The deadline for filing complaints objecting to dischargeability in Hunt's bankruptcy case was December 10, 1988.

On December 21, 1989, the Court confirmed Hunt's Plan of Reorganization. Pursuant to Article XIV of his Plan of Reorganization, Hunt received a "full and complete discharge, pursuant to § 1141(d)(1) of the Bankruptcy Code, of any debt that arose prior to Confirmation ..." upon confirmation of the Plan.

On August 15, 1989, J.W. Beavers, Jr., as trustee of the WHHTE, filed a state court action in North Dakota (the "North Dakota Suit") against, among others, William B. Walters, Sr. ("Walters") and Imperial Oil Company ("Imperial Oil"). The North Dakota Suit sought recovery from Walters and Imperial Oil of damages and possession of property allegedly obtained by them through fraud in prior litigation regarding the ownership of certain mineral rights in North Dakota.

An Answer and Counterclaim of Defendant William B. Walters, Sr. was filed in the North Dakota Suit on October 4, 1989. The Answer and Counterclaim acknowledges the existence of the WHHTE bankruptcy proceeding.

On November 30, 1989, Walters and Imperial Oil filed a Complaint in federal court in North Dakota alleging that the WHHTE, among others, but not Hunt individually, engaged in actions for which relief could allegedly be granted under the Racketeer Influenced and Corrupt Organizations Act. The North Dakota federal court action was voluntarily dismissed on December 14, 1989.

On December 21, 1989, Walters and Imperial Oil filed a Complaint in the United States District Court of Delaware (the "Delaware Suit") against the WHHTE, among others, including Hunt. The Delaware Suit contained essentially the same claims that had been asserted in the North Dakota federal court action voluntarily dismissed one week earlier.

On April 9, 1990, Walters and Imperial Oil ("Plaintiffs") filed the above-styled adversary proceeding against Hunt and the WHHTE (collectively referred to as "the Debtors") seeking a determination that their alleged claims were not discharged pursuant to section 523(a)(3) of the Code because they had no notice of the bankruptcy proceedings.

On April 24, 1990, Hunt filed a Motion to Dismiss the adversary proceeding. On May 9, 1990, the WHHTE filed its Motion to Dismiss the adversary proceeding, as amended on July 26, 1991.

On January 3, 1992, after the parties had completed their discovery, the Court commenced an evidentiary hearing on the issue of notice, which was concluded on February 7, 1992. The parties submitted Post–Hearing briefs to address the Court's concerns regarding the notice issues.

Neither Hunt, nor the WHHTE, scheduled Walters or Imperial Oil in their lists of creditors and schedules of liabilities filed in their respective bankruptcy cases, nor did they ever provide written or oral notice of their respective bankruptcies directly to Walters or Imperial Oil.

Walters is a retired independent oil producer who has been involved in oil investment in North Dakota since 1951. His business has been conducted almost exclusively in North Dakota since that time. For the past ten years, he has resided in or around Williston, North Dakota and Billings, Montana.

Walters founded Imperial Oil in 1958. It has been owned by members of the Walters' family since its inception, although not by Walters himself since November, 1988. The day-to-day affairs of the company were handled by Rhonda Womble, the office manager, from July, 1981 until September, 1991.

Imperial Oil subscribed to the *Wall Street Journal* during the time that notice of Hunt's bankruptcy proceeding and relevant bar dates was published.

Immediately prior to or during the bankruptcies, neither Walters nor Imperial Oil gave any indication to Hunt or the WHHTE that a claim would be made by either the filing of a lawsuit before the proof of claim bar date or engaging in any other objective action demonstrating their intent to pursue a legal claim against Hunt and/or the WHHTE.

*Plaintiffs' Argument*

Plaintiffs contend that they did not receive notice of the Debtors' bankruptcy cases, and therefore, their claims should not be barred for failure to bring them prior to the relevant bar dates. Plaintiffs attempt to show that they did not have knowledge of the Debtors' bankruptcy proceedings by pointing the Court to Walters' testimony that he did not learn of Debtors' bankruptcy cases until after August, 1989, and that he had never seen any of the articles introduced into evidence by the Debtors. Plaintiffs also note that Rhonda Womble, Imperial Oil's office manager, testified that she did not learn of the bankruptcies until sometime in 1990. Ms. Womble also stated that although Imperial Oil subscribed to the *Wall Street Journal* during the pendency of the bankruptcy cases, she never read it, nor knew anyone who did read it.

Plaintiffs also argue that they should be allowed to file a late proof of claim against the WHHTE because the WHHTE never listed either Plaintiff as a creditor even though it should have been aware of their potential claims. Plaintiffs attempt to establish that the WHHTE had knowledge of Plaintiffs' claims by showing the following:

1) The WHHTE had extensive business dealings in the State of North Dakota;

2) Walters and Hunt have a history of disputes arising from the unitization of the North Tioga–Madison Field in North Dakota in the 1960's despite Walters' opposition; and

3) On July 3, 1983, the North Dakota State Industrial Commission issued an Order that the North Tioga–Madison Unit be dissolved, which Order was appealed by Prosper Energy, the unit operator.

Plaintiffs conclude their argument that the WHHTE was aware of Plaintiffs' potential claims by stating:

In sum, the WHHTE knew that it had unknown potential creditors in North Dakota, where it had an extensive business presence; it knew that it had unknown potential creditors among the members of the North Tioga Madison Unit; and it knew that *Walters* was a potential creditor, one with whom it had "earlier disputes" and even ongoing disputes. Yet the WHHTE gave no notice of its bankruptcy, or of the bar date for pre-petition claims, in North Dakota newspapers or the Wall Street Journal (Tr. I at 70–71); nor did it send any notice to Walters or Imperial Oil personally.

Plaintiffs' Post–Hearing Brief at 11.

*Debtors' Argument*

The Debtors assert that neither Hunt, nor the WHHTE had any knowledge of Plaintiffs' alleged claims. Hunt emphasizes that the Plaintiffs never informed him, either orally or in writing, of any potential claim, and that he was not aware of any claims they might pursue. The WHHTE contends that it could not have known of Plaintiffs' claims because the Plaintiffs did not know of their alleged claims until after the WHHTE Plan was confirmed. The WHHTE notes that Walters testified that he did not know of his legal option to pursue the claims until the summer of 1989, and therefore, the WHHTE could not have known of Plaintiffs' claims. Furthermore, both Debtors emphasize that the uncontroverted testimony of William Joseph Lucas established that (i) a meeting of working interest owners was held in Dallas, Texas in 1984 concerning the termination of the North Tioga–Madison Unit in North Dakota, (ii) representatives of Walters and Imperial Oil attended, and (iii) no claims were made or mentioned by Plaintiffs' representatives concerning the operations of the unit at

that meeting. Finally, both Debtors attempt to show their diligence in identifying their creditors, and amending their mailing matrix when additional creditors were discovered.

Debtors next attempt to show that Plaintiffs had knowledge of their respective bankruptcy cases. They note that Imperial Oil subscribed to both the *Wall Street Journal* and the *Billings Gazette*, both of which contained articles of the Debtors' bankruptcies. Debtors also argue that it is inconceivable that Plaintiffs were unaware of the bankruptcy proceedings since Walters' family has had contact with the Hunt interests since the 1950's, including the fact that members of Walters' family live in Texas.

### NOTICE REQUIREMENT UNDER THE DUE PROCESS CLAUSE

■ In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court set the standard for notice under the due process clause by stating that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. Whether a particular method of notice is reasonably calculated to reach interested parties depends upon the particular circumstances of each case. *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988).

■ Bankruptcy law divides creditors into two groups when determining the proper notice to be given of bar dates: known and unknown creditors. The due process standard set forth in *Mullane* requires that Debtors' known creditors be given actual notice of the bankruptcy proceedings and relevant bar dates. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 300, 97 L.Ed. 333 (1953); *Wright v. Placid Oil Co.*,

107 B.R. 104, 106 (N.D.Tex.1989). Unknown creditors, however, are merely entitled to constructive notice of the pendency of a bankruptcy proceeding and of relevant bar dates. *Mullane*, 339 U.S. 306, 70 S.Ct. 652 (1950); *See also Novak v. Callahan (In re GAC Corp.)*, 681 F.2d 1295, 1300 (11th Cir.1982). Thus, the Court must first determine whether the Debtors had knowledge of Plaintiffs' claims.

■ Unknown creditors include those whose identities or claims are not reasonably ascertainable and those who have merely conceivable, conjectural, or speculative claims. *Pope*, 485 U.S. at 490, 108 S.Ct. at 1347; *In re GAC Corp.*, 681 F.2d at 1300. The Debtors need only to have made reasonably diligent efforts to uncover the identities and claims of any creditors; they were not required to search out each conceivable or possible creditor.

■ Plaintiffs failed to establish that either the WHHTE or Hunt knew of Plaintiffs' claims prior to the deadline for filing complaints objecting to dischargeability. Plaintiffs never notified either Debtor of the existence of any claim against them. The first overt action taken by Plaintiffs against the WHHTE occurred on October 3, 1989, when Walters filed his Answer and Counterclaim against the WHHTE in the North Dakota Suit. The first affirmative action taken against Hunt was the filing of the Delaware Suit on December 21, 1989.[1] Plaintiffs' evidence that the Debtors had extensive dealings in North Dakota, and that Walters and Hunt had been on opposite sides concerning the unitization of the North Tioga–Madison Unit in the 1960's, falls short of showing that the Debtors knew of Plaintiffs' potential claims. Indeed, Walters testified that he was unaware that he had a claim against the Debtors until sometime after August, 1989. Therefore, the Court finds that both Walters and Imperial Oil were unknown creditors of the Debtors, and as such, were entitled to constructive notice only.

1. This Court confirmed the Hunt Plan on December 21, 1989.

## CONCLUSIONS OF LAW

Section 523(a)(3) of the Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.  .  .  .  .

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; . . .

11 U.S.C. § 523. Plaintiffs conceded at the February 7, 1992, hearing before the Court that they cannot proceed with a dischargeability action against the WHHTE since it is not an "individual debtor" subject to section 523 of the Code. Accordingly, Plaintiffs seek this Court's permission to amend their Complaint to request leave to file a late proof of claim against the WHHTE. The Court will first address the dischargeability claim against Hunt, and will then consider Plaintiffs' request to amend.

*Dischargeability of Plaintiffs' Claim Against Hunt*

One of the principal policy goals of the Bankruptcy Code is to provide the debtor a "fresh start" by granting the debtor a general discharge of all prepetition debts, with certain exceptions. 11 U.S.C. §§ 727, 1141. Generally, confirmation of a Chapter 11 plan of reorganization discharges the debtor from any debt that arose prior to the date of confirmation, whether a proof of claim was filed or not. 11 U.S.C. § 1141(d)(1)(A). However, section 1141(d)(2) provides that the confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of the Code. Therefore, unless Plaintiffs prevail under their section 523(a)(3) action, the confirmation of Hunt's Plan of Reorganization discharged Hunt from any alleged debt to Plaintiffs.

■ Section 523(a)(3) of the Code provides that an individual debtor in bankruptcy does not receive a discharge from debts that were neither listed nor scheduled in time to permit a timely request for a determination of dischargeability, unless the creditor had "notice or actual knowledge of the case" in time to make a timely request. 11 U.S.C. § 523(a)(3)(B). Plaintiffs have the burden of proving that their debt is excepted from discharge under section 523(a)(3). *Haga v. National Union Fire Ins. Co. of Pittsburgh, Pa. (In re Haga),* 131 B.R. 320, 327 (Bankr.W.D.Tex.1991). However, Hunt bears the burden of showing that Plaintiffs had "notice or actual knowledge" of his bankruptcy case. *Id.*

■ As noted above, the Debtors must have provided Plaintiffs constructive notice of their respective bankruptcy cases since Plaintiffs were unknown creditors. The Court finds that the notices of Hunt's bankruptcy proceeding published in various periodicals pursuant to the Notice Order was sufficient under bankruptcy law, and the Due Process Clause to apprise Walters and Imperial Oil of Hunt's bankruptcy case and the relevant bar dates. *Wright,* 107 B.R. at 108; *In re GAC Corp.,* 681 F.2d at 1300; *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.),* 125 B.R. 650 (M.D.Fla.1991); *In re Chicago, Milwaukee, St. Paul, and Pacific R.R. Co.,* 112 B.R. 920 (N.D.Ill.1990); *Camp v. Morey (In re Gov't Sec. Corp.),* 107 B.R. 1012 (S.D.Fla.1989); *Hassett v. Weissman (In re O.P.M. Leasing Services, Inc.),* 48 B.R. 824 (S.D.N.Y.1985). Therefore, Plaintiffs' cause of action against Hunt under section 523(a)(3) must fail, and any alleged claims of Walters and Imperial Oil against Hunt

are barred by section 524 and section 1141 of the Code and the order confirming the Hunt Plan.

### Leave to Amend Complaint

■ In their Post–Hearing brief filed on March 6, 1992, Plaintiffs have sought permission to amend their Complaint to request leave of this Court to file a late proof of claim against the WHHTE.[2] Pursuant to Bankruptcy Rules 3003(c)(3) and 9006(b), this Court may, in its discretion, allow Plaintiffs to file proofs of claims after the bar date for cause shown. The factors courts generally consider in determining whether to allow the late filing of a proof of claim include: (1) the adequacy of the notice provided, (2) the source of the delay, (3) the prejudice, if any, that will inure to the debtor should the claim be allowed, (4) length of the delay, and (5) good faith of the creditor. *Wright,* 107 B.R. at 106.

■ A creditor's claim can be barred for failure to file a proof of claim prior to the bar date only if the creditor received reasonable notice of the bar date. *Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.),* 863 F.2d 393, 396 (5th Cir.1989). It is undisputed that Plaintiffs did not receive notice of the bar date since the WHHTE did not list them on its schedules. Nor did the WHHTE provide publication notice of its bankruptcy or of the bar date for filing proofs of claims. However, that does not end the Court's inquiry, for a creditor cannot wait indefinitely to file a claim. *In re Pagan,* 59 B.R. 394, 396 (D.Puerto Rico 1986). This Court may apply the equitable doctrine of laches to prevent the late filing of a proof of claim if Plaintiffs' delay was unreasonable. *Morgan v. Barsky (In re Barsky),* 85 B.R. 550, 554 (C.D.Cal.1988). As one bankruptcy court noted, "[e]quity aids the vigilant and diligent, not those who sleep on their

rights." *In re Cmehil,* 43 B.R. 404, 408 (Bankr.N.D.Ohio 1984).

The WHHTE filed Chapter 11 in August, 1986, and the WHHTE Plan of Reorganization was confirmed in September, 1988. Walters testified that he first learned of the Debtors' bankruptcy cases sometime after August, 1989. The Court finds that Walters learned of the WHHTE bankruptcy case prior to October 4, 1989, since his Answer and Counterclaim in the North Dakota Suit filed on that date acknowledged the existence of the WHHTE bankruptcy proceeding. Ms. Womble testified that she did not know about the bankruptcies until sometime in 1990. However, Plaintiffs did not seek leave of Court to file a late proof of claim until March 6, 1992, approximately two and one-half years after Walters admittedly learned of the existence of the Debtors' bankruptcies.

The Court finds Plaintiffs' delay in seeking the appropriate relief[3] against the WHHTE estate excessive and inexcusable, and therefore, denies Plaintiffs' request for leave to amend their Complaint. *Wright,* 107 B.R. at 107 (court is not required to reward dilatory conduct by exercising its discretion to allow the late filing of a proof of claim). The Court is not denying Plaintiffs' request to file a late proof of claim on the grounds that they failed to file a claim prior to the expiration of the bar date, but is barring their claim under the equitable doctrine of laches. *See In re Barsky,* 85 B.R. at 554.

### CONCLUSIONS OF LAW

The Court finds that neither Hunt, nor the WHHTE, had knowledge of Plaintiffs claims. Therefore, the publication notice provided by Hunt was sufficient to satisfy due process considerations, and Hunt's Motion to Dismiss is SUSTAINED. Also, as discussed above, Plaintiffs cannot maintain a claim against the WHHTE under section

---

**2.** The Court notes that Local District Court Rule 5.2(b) contemplates the filing of a motion for leave to amend a Complaint. Plaintiffs have not filed an operative motion for such relief, but instead have simply requested leave of Court in their Post–Hearing brief.

**3.** Plaintiffs filed this adversary proceeding in April, 1990, approximately seven months after Walters became aware of the bankruptcies. However, the adversary was brought as a Complaint to Determine Dischargeability of Debt, and Plaintiffs did not request leave to file a late proof of claim until March 6, 1992.

523 of the Code, and therefore, the WHHTE's Motion to Dismiss is SUSTAINED. The Court further finds that Plaintiffs' request for leave to amend their Complaint to seek leave to file a late proof of claim is DENIED.