# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-11120

In the Matter of: PLACID OIL CO.,

United States Court of Appeals
Fifth Circuit

**FILED**

May 27, 2014

Lyle W. Cayce
Clerk

Debtor

------------------------------

JIMMY WILLIAMS, SR.; JIMMY WILLIAMS, JR.; DALTON GLEN
WILLIAMS; JEANETTE WILLIAMS SHOWS; GWENDOLYN WILLIAMS
PEACOCK, Individually and on Behalf of the Deceased, Myra Williams,

Appellants

v.

PLACID OIL COMPANY,

Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Mr. Williams and his children ("Williamses") brought tort claims against
Placid Oil Company ("Placid") in connection with the allegedly asbestos-related
illness and death of his wife. The bankruptcy court granted Placid's motion for
summary judgment, and the district court affirmed. Because we conclude that
the Williamses were unknown creditors whose pre-petition claims were

No. 12-11120

discharged by Placid's constructive notice and that Placid's notice was not substantively deficient, we AFFIRM.

**I**

Placid, a Texas company, owned and operated a large natural gas production and processing facility near Black Lake, Louisiana. The company filed for bankruptcy in 1986. The bankruptcy court set January 31, 1987, as the bar date by which potential creditors were required to file claims. On three occasions in January 1987, Placid published a Notice of Bar Date in the *Wall Street Journal*, a newspaper of national circulation available in Louisiana. The notice informed creditors of the existence of the bankruptcy case, their opportunity to file proofs of claim, relevant deadlines, consequences of not filing a proof of claim, and how proofs of claim should be filed. On September 30, 1988, Placid confirmed its Fourth Amended Plan of Reorganization ("Plan"). The court order provided that all claims against Placid that arose on or before this confirmation date were forever discharged except for Placid's obligations under the Plan, which did not address potential future asbestos liability.

Mr. Williams worked at the Black Lake facility from 1966 to 1995. For the purposes of this proceeding, the parties agreed that Mr. Williams was occupationally exposed to insulation containing asbestos, that Mrs. Williams was exposed to asbestos dust and fibers when laundering Mr. Williams's clothing, and that the insulation was in Placid's care, custody, and control prior to the sale of the facility in 1988. In 2003, Mrs. Williams's health suddenly deteriorated. She was diagnosed with the asbestos-related lung cancer mesothelioma and passed away on August 9, 2003. In March 2004, in Louisiana state court, the Williamses brought a tort action against Placid, alleging that its negligence caused Mrs. Williams's death and attendant damages. In November 2008, Placid filed a motion to reopen its bankruptcy

No. 12-11120

case, and in September 2009, Placid filed a complaint asking the bankruptcy court to determine whether the Williamses' claims were discharged, thereby commencing this adversary proceeding.

By the early 1980s, Placid was aware, generally, of the hazards of asbestos exposure and, specifically, of Mr. Williams's exposure in the course of his employment. Prior to the Plan's confirmation, no asbestos-related claims had ever been filed against Placid, and the Williamses did not file any proof of claim. After confirmation, other plaintiffs commenced asbestos-related suits against Placid, but Placid has neither been found liable in nor settled any such case. To Mr. Williams's knowledge, none of his co-workers or their spouses has ever developed mesothelioma. Additionally, Mr. Williams testified that he was generally aware of Placid's bankruptcy but does not recall any meetings, updates, or newspaper notices regarding the bankruptcy. To date, Placid has not been found liable in any lawsuit alleging asbestos exposure at a Placid facility, nor has it paid any money to settle such a case.

The bankruptcy court granted Placid's motion for summary judgment and denied the Williamses' cross-motion. The court found that the Williamses had pre-confirmation claims and that the claims were discharged by Placid's constructive notice. The district court affirmed. The Williamses now appeal, contending that because the method and substance of Placid's notice were insufficient on due process grounds, their claims were not discharged.

## II

We review a bankruptcy court's grant of summary judgment de novo. *See In re Kinkade*, 707 F.3d 546, 548 (5th Cir. 2013). Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)); Fed. R. Bankr. P. 7056. To make this determination, we must view

3

No. 12-11120

facts and inferences "in the light most favorable to the nonmoving party." *In re Kinkade*, 707 F.3d at 548.

### III

The Williamses first contend that the bankruptcy court erred in finding that they were "unknown" creditors for whom constructive notice of the bar date satisfied due process.[1]

Section 523(a)(3)(A) of the Bankruptcy Code provides that a creditor's claim may be discharged upon the bankruptcy plan's confirmation if the "creditor had notice or actual knowledge of the case in time for . . . timely filing." 11 U.S.C. § 523(a)(3)(A); *see also In re Kendavis Holding Co.*, 249 F.3d 383, 385–86 (5th Cir. 2001). Due process requires that notice be "reasonably calculated, under all the circumstances, to inform interested parties of the pendency" of a proceeding. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

---

[1] Because the Williamses do not contest on appeal the bankruptcy court's finding that they possessed pre-confirmation claims subject to discharge, this issue is waived. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 476, 499 n.1 (5th Cir. 2004). The dissent recognizes this omission as well. *Post* at 2. We note, however, that *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012), raises doubts as to whether the Williamses actually had dischargeable claims. In that case, the Third Circuit held that for due process purposes, the existence of a pre-confirmation claim is governed by the law at the *time of notice*, and not by retroactive application of current law. *Id.* at 108. Here, Placid provided constructive notice to its unknown creditors in 1987. In finding that the Williamses had pre-petition claims, the bankruptcy court relied on our 1994 decision in *Lemelle v. Universal Manufacturing Corporation (In re Lemelle)*, 18 F.3d 1268 (5th Cir. 1994). Even if we assume that the district court correctly read *Lemelle* to establish that the pre-petition relationship test governs the existence of asbestos claims, that case post-dated Placid's bankruptcy. But because this issue has not been squarely presented, we do not opine on it today and proceed from the premise that the Williamses had pre-confirmation claims. The dissent begins from the opposite premise—that the Williams had no dischargeable pre-confirmation claims—by rendering *Lemelle* inapplicable to latent disease-related claims. *Post* at 1. Assisted by proper briefing, a future panel may well opt to narrow *Lemelle* in this way, but we observe today that the dissent's "context-specific approach," *id.* at 9, would effectively require firms across innumerable industries to appoint a future-claims representative and reserve assets of the estate *pro forma*, in order to definitively resolve any "unknown, future latent-disease claims" at bankruptcy, *id.* at 7.

No. 12-11120

The level of notice required by the Due Process Clause depends on whether a creditor is "known" or "unknown." A debtor must provide actual notice to all "known creditors" in order to discharge their claims. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 295–97 (1953). Known creditors include both claimants actually known to the debtor and those whose identities are "reasonably ascertainable." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 489–490 (1988). A claimant is "reasonably ascertainable" if he can be discovered through "reasonably diligent efforts." *Id.* at 490 (citation omitted). "[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable." *In re Crystal Oil*, 158 F.3d at 297.[2] By contrast, the debtor need only provide "unknown creditors" with constructive notice by publication. *Id.* at 295, 298. Publication in a national newspaper such as the *Wall Street Journal* is sufficient. *Id.* at 295, 297–98.

The crux of this dispute is the meaning of *Crystal Oil*. In *Crystal Oil*, the Louisiana Department of Environmental Quality ("LDEQ") brought environmental damage claims against Crystal Oil Company after its bankruptcy plan's confirmation. Prior to the bankruptcy, a company representative had briefly corresponded with LDEQ. The LDEQ

---

[2] We reject the Williamses' interpretation at oral argument of the Third Circuit case *In re Grossman's*. The Williamses asserted that under *Grossman's*, sufficiency of notice hinges on whether claimants were aware of their vulnerability to asbestos or on a "reasonableness" standard. Regarding the first test, awareness of vulnerability was only one of many factors that the court in dicta recommended that the lower court consider in its discharge analysis. Another factor was "whether the claimants were known or unknown creditors." *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 127 (3d Cir. 2010). In any case, Mr. Williams was aware of his vulnerability: He knew that he was exposed to asbestos in his work, and the dangers of asbestos were widely known at the time, as even the Williamses contend. As for "reasonableness" of notice, the Third Circuit articulated no such amorphous standard; rather, the overall test is whether the notice comported with due process. *Id.* at 125, 127.

representative knew of contamination on a plot of land and, without informing Crystal Oil of the contamination or any potential environmental claim, asked only whether the company owned the land. After a faulty but good-faith title investigation, Crystal Oil replied in the negative. *Id.* at 293–95.

We held that although the issue was factually close, the bankruptcy court's determination that LDEQ was an unknown creditor was not clear error. *Id.* at 298. We first synthesized the case law: "[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable." *Id.* We reasoned that LDEQ might arguably be a known creditor since the Crystal Oil employee expressed concern that "there could be environmental problems" after speaking with the LDEQ representative. *Id.* at 298. Moreover, the fact that the LDEQ representative had mentioned Crystal Oil's predecessor—the previous title holder of the land—meant that Crystal Oil had notice that LDEQ might have a claim. *Id.* On the other hand, LDEQ's inquiry mentioned nothing about environmental problems, and Crystal Oil lacked concrete notice of any claim. *Id.* We thus concluded that the bankruptcy court's finding that LDEQ was an unknown creditor was not clear error.

Here, we clarify this Circuit's understanding of the rule of *Crystal Oil.* At one extreme, the law does not require that a creditor serve upon the debtor a formal complaint in order to make himself "reasonably ascertainable" or "known." However, at a minimum, the debtor must possess "specific information" about a manifested injury, to make the claim more than merely foreseeable.

This understanding of *Crystal Oil* is informed by several authorities and by our sensitivity to the policy concerns underlying bankruptcy law. First, the Supreme Court's opinion in *Mullane,* the origins of due process jurisprudence

No. 12-11120

in the pre-discharge notice context, teaches that unknown creditors are those whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane*, 339 U.S. at 317. The Court specifically declined to impose upon the debtor "ordinary standards of diligence," given countervailing concerns for efficiency.[3] *Id.* Thus, the Court recognized a temporal distinction; "conjectural" claims of a creditor that arise too far in the future cannot make that creditor "known." *Id.*; *see also In re Hunt*, 146 B.R. 178, 182 (Bankr. N.D. Tex. 1992) ("Unknown creditors include those whose identities or claims are not reasonably ascertainable and those who have merely *conceivable, conjectural, or speculative* claims." (emphasis added)).

The decisions of other courts of appeals also establish that the claim of a known creditor must be based on an actualized injury, as opposed to merely foreseeable. The Third Circuit's *Chemetron* decision, which we cited favorably in *Crystal Oil*, held that known claimants must be "reasonably ascertainable, *not* reasonably foreseeable." *Chemetron Corp. v. Jones*, 72 F.3d 341, 348 (3d Cir. 1995). In *Chemetron*, the claims at issue were filed by residents of and occasional visitors to an area contaminated by radioactive waste. *Id.* at 344–45. The court explained that a foreseeability test conflicted with other authorities and would "place an impossible burden on debtors," given the difficulty of defining the affected geography and individuals. *Id.* at 347–48; *see also* COLLIER ON BANKRUPTCY ¶ 342.02 (6th ed. 2013) (quoting *Chemetron* definition of unknown creditors).

---

[3] Although *Mullane* defined unknown creditors in the context of judicial settlement of accounts by the trustee of a common trust fund, in *Tulsa Professional Collection Services*, the Supreme Court applied the *Mullane* definition to the analogous context of claims discharge in bankruptcy. *Tulsa Prof'l Collection Servs.*, 485 U.S. at 490.

No. 12-11120

Two appeals court opinions are particularly persuasive because they apply *Crystal Oil*. Those courts concluded that creditors were "known" because the debtor knew of specific complaints or injuries. The First Circuit in *In re Arch Wireless, Inc.*, 534 F.3d 76 (1st Cir. 2008), concluding that the bankruptcy court did not clearly err in finding a creditor to be "known," cited emails sent by the creditor to the debtor prior to the bankruptcy. The emails alleged that the debtor's faulty products had caused substantial losses and "could reasonably be understood to assert an entitlement to affirmative compensation." *Id.* at 81–82. Similarly, the Fourth Circuit in *In re J.A. Jones, Inc.*, 492 F.3d 242 (4th Cir. 2007), explained that an employee of the debtor was fully aware of a fatal and widely publicized accident in a construction zone for which the debtor served as the general contractor. Accordingly, the bankruptcy court did not clearly err in finding that the estate of an accident victim was a known creditor, even though no pre-petition claims had been filed. *Id.* at 251–52 & n.9. Thus, to conclude that a creditor is known, a court must determine that, at a minimum, a debtor has "specific information" related to an actual injury suffered by the creditor. *In re Crystal Oil*, 158 F.3d at 297.[4] Information, however specific, that makes a claim only foreseeable or conjectural is insufficient.[5]

---

[4] To use the words of *Mullane* invoked by the dissent, *post* at 10 n.5, individuals who lack any actual injury have only "interests [that] are either conjectural or future," *Mullane*, 339 U.S. at 317, and cannot be deemed "interested parties" or "known present beneficiaries" requiring actual notice, *id.* at 318.

[5] In *Chemetron*, the Third Circuit also recognized that a creditor could become "known" without actually entering its claim into the "books and records" of the debtor, but that the facts of that case did not present the opportunity to address the issue. *Chemetron*, 72 F.3d at 347 n.2 ("Situations may arise when creditors are 'reasonably ascertainable,' although not identifiable through the debtor's books and records."). In this case, we shed additional light on the space between mere foreseeability and books-and-records knowledge by requiring that the debtor possess information regarding a creditor's actual injury, in order for that creditor to be known.

No. 12-11120

Furthermore, policy concerns specific to bankruptcy weigh heavily against defining known creditors as those with merely foreseeable claims. Bankruptcy offers the struggling debtor a clean start.  In the interests of facilitating this recovery and balancing due process considerations, the courts have established a practical limit to the debtor's duty to notify creditors: Actual notice is required only for "known" creditors.  We decline today to alter this limit.

Applying the above principles, we hold that the bankruptcy court did not err in finding that the Williamses were unknown creditors under the undisputed facts presented here.  Although Placid knew of the dangers of asbestos and Mr. Williams's exposure, such information suggesting only a risk to the Williamses does not make the Williamses known creditors.  Here, Placid had no specific knowledge of any actual injury to the Williamses prior to its bankruptcy plan's confirmation.  *Cf. City of New York*, 344 U.S. at 296 (concluding that holder of known liens was entitled to actual notice). Furthermore, no instances of asbestos-related injury or illness were known to Placid prior to confirmation.  *In re J.A. Jones, Inc.*, 492 F.3d at 251–52 (accident-caused injuries known to debtor).  Press clippings about widely-known, but general, risks of asbestos exposure do not establish that Placid knew of any specific injury to its employees or any asbestos-related claim.[6]

The Williamses invoke a series of policy arguments that are either inapplicable or unpersuasive.  They first contend that delivering actual notice to Mr. Williams "would have been simple."  The proper threshold inquiry, however, is not the cost of providing actual notice, which is inevitably

---

[6] The Williamses also submit that a periodical article about risks to family members of asbestos factory workers demonstrates that Placid was aware of Mrs. Williams's potential claim.  However, Mr. Williams did not work in an asbestos factory, and the Williamses have not shown that Placid was aware of the level of Mrs. Williams's exposure.

negligible when contemplating only an individual creditor. Rather, the bankruptcy court must assess the reasonableness of ascertaining known creditors. As for this threshold question, the Williamses fail to explain how Placid should have reasonably ascertained that some of its hundreds of employees (not to mention former employees) had actual asbestos-related injuries. Next, the Williamses submit that because Placid had superior knowledge of asbestos-related risks, it must bear the consequences of its choice to provide constructive notice where it had "no contemplation of future claims." But this theory misses the bankruptcy overlay: If a debtor has "no contemplation" of a creditor's pre-petition claim, then that creditor is by definition unknown, and constructive notice discharges the claim upon confirmation. Finally, the Williamses emphasize the unique situation presented by the latency of asbestos-related illness. We are not unsympathetic to fairness concerns, but on the record and briefing before us, we again conclude that bankruptcy norms must trump: Parties with merely foreseeable claims are not "known" creditors.[7]

## IV

The Williamses further contend that even if they were unknown creditors, Placid's general notices of the bar date, published in the *Wall Street Journal* and not mentioning potential asbestos claims, were substantively insufficient for due process purposes.

---

[7] We again note the Williamses's failure to appeal the bankruptcy court's finding that they had dischargeable pre-confirmation claims. *See supra* n.1. Furthermore, as the bankruptcy court observed, Congress can enact a solution, as it has indeed begun to do in the asbestos injury context. But we reject the Williamses' policy-driven reliance on Congress's amendment to the Bankruptcy Code. As the bankruptcy court correctly explained, the Code provisions providing special protection to asbestos victims would not have applied to Placid's bankruptcy since Placid had never been subjected to asbestos claims. *See* 11 U.S.C. § 524(g). We opt not to extend the statute beyond its scope.

No. 12-11120

We have never required bar date notices to contain information about specific potential claims. To the contrary, we have determined that publication in the national edition of the *Wall Street Journal* discharges the pre-confirmation claims of unknown creditors. *In re Crystal Oil*, 158 F.3d at 295, 297–98. Furthermore, neither the Bankruptcy Code nor Rules require bar date notices to apprise creditors of potential claims. *See* Fed. R. Bankr. P. 2002(f) (requiring only that notice state "time allowed for filing claims").

We hold that because a bar date notice need not inform unknown claimants of the nature of their potential claims, Placid's notices were substantively sufficient to satisfy due process. Placid's notice informed claimants of the existence of the bankruptcy case, the opportunity to file proofs of claim, relevant deadlines, consequences of not filing a proof of claim, and how proofs of claim should be filed.[8] We decline to articulate a new rule that would require more specific notice for unknown, potential asbestos claimants.[9]

---

[8] Furthermore, in *Shelton Property Rural Acreage, L.L.C. v. Placid Oil Co. (In re Placid Oil Co.)*, 450 F. App'x 323 (5th Cir. 2011) (unpublished), we found that the same notice in the same bankruptcy case was sufficient to discharge environmental damage claims brought by an unknown creditor. *Id.* at 326 ("[N]otice by publication in the *Wall Street Journal* is sufficient for unknown creditors.").

[9] The Williamses' reading of the case law is unpersuasive. In *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012), a debtor allegedly fraudulently concealed an antitrust conspiracy from a creditor. Confronted with these unique facts, the district court held that notice of specific claims is required prior to discharge "where a debtor is aware of certain claims against it due to information uniquely within its purview." *Id.* at 159. Another case cited by the Williamses deals with known, not unknown, claimants. *See Acevedo v. Van Dorn Plastic Mach. Co.*, 68 B.R. 495, 499 (Bankr. E.D.N.Y. 1986) (reasoning that because employer knew of employee's machine-related injury before its bankruptcy, its failure to notify machine's manufacturer about the injury would make manufacturer's post-confirmation claim non-dischargeable). *AmChem Products v. Windsor*, 521 U.S. 591 (1997), suggests that inadequate notice might raise due process concerns in the class action context, but the Court's observations were dicta. *See post* at 4–5. Similarly, other discussion in *In re Hexcel Corporation* invoked by the Williamses lay beyond that court's holding; that case concerned the distinct question of when and whether a pre-confirmation claim arose. *See In re Hexcel Corp.*, 239 B.R. 564, 570–72 (N.D. Cal. 1999). Finally, the Williamses' contention that "sufficiency of notice is determined on a creditor-by-creditor basis" takes the Supreme Court's words in *Tulsa Professional Collection Services* out of

No. 12-11120

**V**

For the foregoing reasons, we AFFIRM.

---

context. In that case, the Court explained that actual notice is required for known creditors, whereas constructive notice is sufficient for unknown creditors. *Tulsa Prof'l Collection Servs.*, 485 U.S. at 484. We have already explored this principle and need not revisit it.

No. 12-11120

JAMES L. DENNIS, Circuit Judge, dissenting:

The underlying legal issue in this case is whether a bankruptcy court may, consistent with the Constitution's guarantee of due process, hold that a state-law wrongful-death claim based on the death of a housewife, who fatally contracted mesothelioma from asbestos fibers on her husband's work clothes, was discharged in a bankruptcy filed by her husband's former employer fifteen years before she developed or was aware of any symptom of the disease. In my view, the bankruptcy court in this case erred in failing to recognize that such a result would violate the constitutional guarantee of due process of law. The bankruptcy court was led into this constitutional error by its misinterpretation of our decision in *Lemelle v. Universal Manufacturing Corp.*, 18 F.3d 1268, 1276 (5th Cir. 1994), as adopting the "pre-petition relationship test" formulated by other circuits and calling for the discharge of any asbestos-related claim resulting from a victim's exposure to asbestos by a debtor prior to the debtor's petition for bankruptcy. Contrary to the bankruptcy court's reading, however, *Lemelle* did not address whether an unknown, future claim,[1] such as the housewife's latent mesothelioma claim in this case, was dischargeable in bankruptcy and it certainly did not hold that this circuit has adopted the pre-petition relationship test for application in bankruptcy cases involving asbestos-related injuries.[2]

---

[1] For the purpose of this opinion, and unless otherwise stated, "unknown, future claim" refers to the future claim of an asbestos-exposed individual whose disease has not manifested itself by the time of the bankruptcy filing. In other words, it is a claim that is unknown to either the debtor or the potential creditor at that time.

[2] Because there was no evidence in the record regarding whether the claimant, the mother of two men injured in mobile-home fire, had purchased or acquired an allegedly defective mobile home from the debtor, a manufacturer of such homes, the *Lemelle* court concluded:

> Where, as here, the injury and the manifestation of that injury occurred simultaneously—more than three years after [the debtor] filed its petition and

No. 12-11120

Our duty to correct the bankruptcy court's constitutional errors as well as its misreading of *Lemelle* is complicated, however, by the plaintiffs' failure to adequately brief those issues in this court. On appeal, the plaintiffs squarely address only the issue of whether the constructive notice by publication provided to unknown, future claimants, such as the latent mesothelioma victim in this case, passed constitutional muster. Nevertheless, that alleged error inextricably relates directly to, and cannot adequately be addressed without considering, a more fundamental due process issue, *viz.*, whether a latent asbestos claim of an asbestos-exposed, but not yet knowingly injured, person is dischargeable in bankruptcy and, if so, under what circumstances. Therefore, I believe that the plaintiffs have sufficiently preserved and argued all such errors for our review. Even if the majority of this panel refuses to grant the plaintiffs relief because of their deficient appellate briefing, this panel still owes a duty to oversee the orderly development of our jurisprudence, and a duty to future victims of mesothelioma and other latent diseases, to acknowledge and correct, rather than to paper over, the errors plainly evident in the bankruptcy court's decision below.

---

> more than two years after the plan was confirmed, we think that, at a minimum, there must be evidence that would permit the debtor to identify, during the course of the bankruptcy proceedings, potential victims and thereby permit notice to these potential victims of the pendency of the proceedings. This record is devoid of any evidence of any pre-petition contact, privity, or other relationship between [the debtor], on the one hand, and [the mother] or the decedents, on the other. We think the absence of this evidence precludes a finding by the district court that the claims asserted by [the mother] were discharged in [the debtor]'s bankruptcy proceedings.

18 F.3d at 1277 (citation omitted). In other words, this court had no occasion to adopt a definitive test defining a "claim" for the purposes of § 101(5)(A) of the Bankruptcy Code—much less one with respect to unknown, future mesothelioma claimants—because it was unnecessary for the disposition of the case.

14

No. 12-11120

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the Supreme Court considered what notice is mandated by the Due Process Clause. Due process, the Court said, "at a minimum" requires notice and an opportunity to be heard before a court may deprive a person of his or her property. *Id.* at 313. Personal notice, however, is not always necessary; rather, the Constitution requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 313-14. To determine what form the notice must take, the *Mullane* Court distinguished between two types of claimants: known and unknown. *See id.* at 317-19. The Court explained that for claimants "whose interests are either conjectural or future," "extended searches are not required" and constructive notice by publication is sufficient. *Id.* at 317-18. The *Mullane* Court did not indicate, however, that the unknown-claimants category includes asbestos-exposed persons with latent-disease damage that is as yet unknown to those future victims.

Although "*Mullane* allows constructive notice to unknown claimants so long as no other method would be more effective in reaching them, the Court has not endorsed such an approach to claimants who are not only unknown but 'unselfconscious and amorphous,' as are future claimants in bankruptcy," such as Myra Williams with her unknown, latent asbestos claim. Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?*, 78 AM. BANKR. L.J. 339, 351-52 (2004) (footnote omitted) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997)); *see also* Georgene Vairo*, Mass Tort Bankruptcies: The Who, the Why and the How*, 78 AM. BANKR. L.J. 93, 134 (2004) ("[N]either *Mullane* nor any case following it involved claimants who were not only unknown to the party sending the notice

but who were in essence unknown to themselves and who therefore would not recognize themselves as the intended targets of the notice even were the notice actually received."). Not only has the Court never endorsed such an approach, but a majority of the Court has also strongly indicated that requiring only constructive notice to individuals exposed to asbestos but who do not know about either their exposure or the harm that may result would present grave problems. In *Amchem Products, Inc. v. Windsor,* the Supreme Court considered certification of a class action under Rule 23(b)(3) that included individuals who had been exposed to asbestos but had yet to manifest any injuries. 521 U.S. at 597, 602-03. The Court ruled that the class as certified failed to satisfy Rule 23's predominance and adequacy-of-representation requirements, *id.* at 622-28, and further cautioned that

> [m]any persons in the exposure-only category, the Court of Appeals stressed, may not even know of their exposure, or realize the extent of the harm they may incur. Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.
>
> Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium. Yet large numbers of people in this category—future spouses and children of asbestos victims—could not be alerted to their class membership. And current spouses and children of the occupationally exposed may know nothing of that exposure.
>
> Because we have concluded that the class in this case cannot satisfy the requirements of common issue predominance and adequacy of representation, we need not rule, definitively, on the notice given here. In accord with the Third Circuit, however, we recognize the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous.

No. 12-11120

*Id.* at 628 (citation omitted). Although *Amchem* emphasized the grave question regarding whether class-action notice sufficient under the Constitution and Rule 23 can ever be given to unselfconscious and amorphous individuals exposed to asbestos but who have yet to manifest any injuries, the same serious question exists as to whether notice sufficient under the Constitution can ever be given to workers exposed to asbestos and their families so as to properly discharge their claims in bankruptcy.

Several courts and commentators have also recognized that constructive notice to such unknown—and unknowing—future claimants fails to comport with the guarantee of due process. *See, e.g.*, *In re Hexcel Corp.*, 239 B.R. 564, 571 (N.D. Cal. 1999) (stating that publication notice may be sufficient for "creditors *who could contemplate that they might have a claim*" but reasoning that this is not the case "for a potential creditor who had no way of knowing that it may have a claim against the debtor some time in the future"); Bartell, *supra*, at 354 ("If they are alive and actually see the notice, [future claimants] could not recognize themselves as affected in any way by the bankruptcy court case and will, therefore, take no action to ensure their interests are represented."). Unknown, future claimants, even if they receive notice of a bankruptcy proceeding, are often unable to recognize that their rights will be affected by the bankruptcy, for instance because they are unaware that the debtor has exposed them to toxic substances or because they have yet to manifest any injuries by the time the debtor files for bankruptcy. "Even if they fully appreciate the significance of [the] notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether" to participate in the bankruptcy. *Amchem*, 521 U.S. at 628. This is especially true for claimants with asbestos-related injuries, which often take years to manifest themselves. *See id.* at 598 (noting "a latency

17

period that may last as long as 40 years for some asbestos related diseases")
(internal quotation marks omitted); *Kane v. Johns-Manville Corp.*, 843 F.2d
636, 639 (2d Cir. 1988) ("A significant characteristic of these asbestos-related
diseases is their unusually long latency period.  An individual might not
become ill from an asbestos-related disease until as long as forty years after
initial exposure.  Hence, many asbestos victims remain unknown, most of
whom were exposed in the 1950's and 1960's before the dangers of asbestos
were widely recognized.  These persons might not develop clinically observable
symptoms until the 1990's or even later."); *In re Evans Prods. Co.*, 2009 WL
2448145, at *8 (Bankr. S.D. Fla. Aug. 6, 2009) (noting that "[d]ecades might
pass before these persons even realize any harm has come to them" from
asbestos).

"[W]hen an individual cannot recognize that he or she has a claim in a
bankruptcy case and, therefore, cannot make a decision about how to assert
that claim, that person is functionally or constructively 'incompetent' for
purpose of the bankruptcy case." Bartell, *supra*, at 366.  "These claimants . . .
have no ability to represent their own interests in the bankruptcy case because
they cannot be given the information necessary to enable them to make
decisions about those interests." *Id.* at 370.  Consequently, "[c]onstructive
notice cannot reach [them because they] do not know of their claims." *Id.*  In
other words, "[p]ublication is not notice at all." *Id.*

However, "a bankruptcy court may appropriately appoint a guardian *ad
litem*"—or, stated differently, a future-claims representative—"to represent
their interests in an adversary proceeding under [Bankruptcy] Rule 7017." *Id.*
at 367; *see* FED. R. BANKR. P. 7017 (stating that Federal Rule of Civil Procedure
17 "applies in adversary proceedings"); FED. R. CIV. P. 17(c) (permitting "a
general guardian," "a committee," "a conservator," or "a like fiduciary" to "sue

or defend on behalf of a minor or an incompetent person" and providing that "[t]he court must appoint a guardian at litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action"); *cf.* 11 U.S.C. § 524(g).[3]   Not only could notice to a future-claims representative appointed in this manner satisfy due process, *see, e.g.*, *In re Schicke*, 97 F. App'x 249, 251 (10th Cir. 2004) (notice to judgment creditor's attorney satisfied due process); *In re De La Cruz*, 176 B.R. 19, 23-24 (9th Cir. B.A.P. 1994) (notice to attorney for guardian of minor creditor satisfied due process); *In re Chi., Rock Island & Pac. R.R. Co.*, 788 F.2d 1280, 1281-83 (7th Cir. 1986) (notice to minor creditor's mother satisfied due process), but failure to appoint a future-claims representative likely means that unknown, future latent-disease claims may not, consistent with due process, be discharged, *see In re Chance Indus., Inc.*, 367 B.R. 689, 708-10 (Bankr. D. Kan. 2006) (concluding in the alternative that "a confirmation order that discharges the claims of an unknown future tort claimant without any notice [to the creditor or to a future-claims representative] and an opportunity to be heard violates due process" (citing Bartell, *supra*, at 354-56)); Bartell, *supra*, at 370; *see also Jones v. Chemetron Corp.*, 212 F.3d 199, 209 (3d Cir. 2000) ("[I]f a potential claimant lacks sufficient notice of a bankruptcy proceeding, due process

---

[3] "Under § 524(g), a court-appointed fiduciary stands in for . . . future asbestos claimants, and the court ensures that any proposed plan is fair to them." *In re Plant Insulation Co.*, 734 F.3d 900, 906 (9th Cir. 2013) (citing 11 U.S.C. § 524(g)(4)(B)(i)-(ii)). Although Congress enacted § 524(g) in 1994—six years after Placid's bankruptcy—Congress did so "in light of the approach taken in the celebrated Johns-Manville bankruptcy case," *id.* at 905, which pre-dated confirmation of Placid's 1988 plan of reorganization, *see In re Johns-Manville Corp.*, 68 B.R. 618, 626-27 (Bankr. S.D.N.Y. 1986), *aff'd* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane*, 843 F.2d at 636. The bankruptcy court was therefore able to appoint a future-claims representative at the time of Placid's bankruptcy. Regardless, the bankruptcy court's chief error in this case stems from neglecting to recognize that discharging Myra Williams's unknown, future mesothelioma claim based on constructive notice alone failed to comport with the requirements of due process.

considerations dictate that his or her claim cannot be discharged by a confirmation order.  Such due process considerations are often addressed by the appointment of a representative to receive notice for and represent the interests of a group of unknown creditors.") (citations omitted); *cf. Covey v. Town of Somers*, 351 U.S. 141, 146 (1956) (concluding that "[n]otice to a person known to be an incompetent who is without the protection of a guardian" does not satisfy *Mullane*).  Recognizing this, many courts have discharged unknown, future claims but only when constructive notice has been coupled with the appointment of a future-claims representative.  *See, e.g.*, *In re Johns-Manville Corp.*, 68 B.R. 618, 626-27 (Bankr. S.D.N.Y. 1986), *aff'd* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane*, 843 F.2d at 636; *cf. Jones*, 212 F.3d at 209-10 (holding that if a claimant who was unborn at the time of confirmation had a "claim," it was not discharged when no representative had been appointed to represent his interests in the bankruptcy).

These and other authorities[4] recognize the grave due process problems presented by the discharge of unknown—and unknowable—future claims,

---

[4] *See Wright v. Owens Corning*, 679 F.3d 101, 108 n.7 (3d Cir. 2012) ("express[ing] no opinion on the broader issue of whether discharging unknown future claims comports with due process" but stating that "[b]ecause a future claims representative was not appointed in these bankruptcy cases, we leave open whether, when [a future-claims] representative provides persons with unknown future claims an opportunity to participate in the bankruptcy case through that representation, they are afforded due process through otherwise adequate notice to the future claims representative" (citing *Jones*, 212 F.3d at 209; Bartell, *supra*, at 340)); *In re Grossman's Inc.*, 607 F.3d 114, 127-28 (3d Cir. 2010) ("In determining whether an asbestos claim has been discharged, the court may wish to consider, inter alia, the circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g)."); *cf. Fogel v. Zell*, 221 F.3d 955, 960-61 (7th Cir. 2000) (questioning whether exposure-only asbestos claimants possess a "claim" under the Bankruptcy Code and reasoning that "[i]t seemed arbitrary to devote the entirety

No. 12-11120

such as Myra Williams's latent asbestos claim, when constructive notice to individuals exposed to toxic substances but who lack knowledge of either their exposure or any as-yet unaccrued injury is effectively no notice at all. Therefore, neither *Lemelle* nor *Mullane*—which did not consider notice with respect to unknown and unperceivable future claims—should be read as holding that due process has been satisfied when all that is provided is constructive notice to exposure-only individuals who may be unaware of their exposure, unaware of the severe harm that may ultimately result, and unable to recognize that their rights may be affected in bankruptcy. Rather, careful thought and a context-specific approach is required before concluding that unknown, future claimants have been provided with notice and an opportunity to be heard such that their claims may, consistent with the guarantee of due process, be discharged. *See In re Grossman's Inc.*, 607 F.3d 114, 127 (3d Cir.

---

of the estates of the bankrupt asbestos manufacturers to compensating those sufferers whose diseases had happened to manifest themselves before rather than after (perhaps shortly after) the bar dates set in the various bankruptcy proceedings"); *In re Chateaugay Corp.*, 944 F.2d 997, 1003-04 (2d Cir. 1991) ("Accepting as claimants those future tort victims whose injuries are caused by pre-petition conduct but do not become manifest until after confirmation, arguably puts considerable strain not only on the Code's definition of 'claim,' but also on the definition of 'creditor'—an 'entity that has a claim against the debtor that *arose* at the time of or before the order for relief concerning the debtor.'" (quoting 11 U.S.C. § 101(9)(A))); *In re UNR Indus., Inc.*, 725 F.2d 1111, 1120 (7th Cir. 1984) (noting the "difficult and far-reaching questions" concerning whether future asbestos victims have pre-petition claims); *In re Hexcel Corp.*, 239 B.R. 564, 567 (N.D. Cal. 1999) (holding that "[a]ny *future, unknown* claim that could not have been reasonably contemplated does not fall within the purview of [§] 101(5) and must not be discharged, even if the conduct giving rise to the claim took place before the bankruptcy proceedings" and reasoning that "[i]t would be incongruent for the Code to provide so extensively for notice to parties affected by the bankruptcy proceedings, yet to define a pre-petition claim under [§] 101(5) so broadly as to adversely affect the interests of those who could not possibly have notice of their rights and interests"); *In re Evans Prods. Co.*, 2009 WL 2448145, at *7-10 (Bankr. S.D. Fla. Aug. 6, 2009) ("[T]he extremely long latency period for asbestos-related illness means that[] . . . [some victims] will have no knowledge of their exposure or their illness, and cannot be said to have had any cognizable relationship with the debtor, or any identifiable injury at the time of the bankruptcy.").

2010) ("Whether a particular claim has been discharged by a plan of reorganization depends on factors applicable to the particular case[.]").

The record in this case fails to demonstrate that Myra Williams was aware of either her exposure to asbestos dust and fibers or that she might someday grow ill and die as a consequence of that exposure. Under these circumstances, she was functionally incompetent to receive notice of Placid's bankruptcy because, even if she had in fact received notice of the proceedings, she would not have been able to recognize their effect on her or to understand that her rights could be affected by them. And because there was no future-claims representative to represent her interests, the bankruptcy court erred by concluding that she received constitutionally adequate notice that her claim would be discharged in the bankruptcy if she did not participate in the proceedings. In sum, constructive notice by publication to asbestos-exposed individuals with unmanifested or latent mesothelioma, without appointment of a representative for such future claimants, does not satisfy due process. As the Court said in *Mullane*, "[w]e have before indicated in reference to notice by publication that, 'Great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact.'" 339 U.S. at 320 (quoting *McDonald v. Mabee*, 243 U.S. 90, 91 (1917)).

For these reasons, I respectfully dissent.[5]

---

[5] Additionally, I believe that the majority also errs in attempting to put a gloss on what constitutes a "known" claim under *Mullane*. In *Mullane*, the Court said:

> As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.

No. 12-11120

---

Id. at 318. Nowhere in Mullane does the court say that a claim is not known unless the injury giving rise to it is "manifested" or "actual." Compare, e.g., ante, at 6, 8. At most, the Court indicated that a state may "dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee." Id. at 317.