# United States Court of Appeals
## For the First Circuit

No. 17-2079

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of Puerto Rico Electric Power Authority (PREPA),

Debtor.

---

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of Puerto Rico Electric Power Authority (PREPA),

Debtor, Appellee,

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,

Objectors, Appellees,

v.

AD HOC GROUP OF PREPA BONDHOLDERS; ASSURED GUARANTY CORPORATION; ASSURED GUARANTY MUNICIPAL CORPORATION; NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION; SYNCORA GUARANTEE, INC.,

Movants, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Laura Taylor Swain, U.S. District Judge[*]]

---

Before
Howard, Chief Judge,
Kayatta, Circuit Judge,
and Torresen, Chief U.S. District Judge.[**]

---

[*]Of the Southern District of New York, sitting by designation.
[**]Of the District of Maine, sitting by designation.

Martin J. Bienenstock, with whom Timothy W. Mungovan, Stephen L. Ratner, Mark D. Harris, Chantel L. Febus, and Proskauer Rose LLP were on brief, for appellee Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority.

Thomas Moers Mayer, with whom Amy Caton, Gregory A. Horowitz, Alice J. Byowitz, Douglas Buckley, Kramer Levin Naftalis & Frankel LLP, Manuel Fernández-Bared, Linette Figueroa-Torres, Nayda Pérez-Román, and Toro Colón Mullet P.S.C. were on brief, for appellants Ad Hoc Group of PREPA Bondholders.

Heriberto Burgos Pérez, Ricardo F. Casellas-Sánchez, Diana Pérez-Seda, Casellas Alcover & Burgos P.S.C., Howard R. Hawkins, Mark C. Ellenberg, Ellen Halstead, and Cadwalader, Wickersham & Taft LLP, on brief for appellants Assured Guaranty Corp. and Assured Guaranty Municipal Corp.

Gregory Silbert, Marcia Goldstein, Jonathan Polkes, Kelly DiBlasi, Gabriel A. Morgan, Weil, Gotshal & Manges LLP, Eric Pérez-Ochoa; Alexandra Casellas-Cabrera Lourdes; Arroyo Portela, and Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C., on brief for appellant National Public Finance Guarantee Corp.

Carlos A. Rodríguez-Vidal, Solymar Castillo-Morales, Goldman Antonetti & Cordova, LLC, My Chi To, Elie J. Worenklein, and Debevoise & Plimpton LLP, on brief for appellant Syncora Guarantee, Inc.

---

August 8, 2018

---

**KAYATTA**, **Circuit Judge**. We consider again the application of PROMESA,[1] a statute Congress enacted to address Puerto Rico's financial crisis. In this instance, holders of revenue bonds issued by the Puerto Rico Electric Power Authority, known as PREPA, sought relief from a stay of actions against PREPA to petition another court to place PREPA in receivership. The district court concluded that PROMESA sections 305 and 306, 48 U.S.C. §§ 2165, 2166, precluded it from granting such relief. For the following reasons, we conclude otherwise. Whether the district court should in its discretion grant the requested relief, and on what terms and conditions, is a matter we leave to the able district court to decide on remand in accordance with this opinion and based on circumstances as they then exist.

## I.

Title III of PROMESA authorizes Puerto Rican governmental entities (such as PREPA) to restructure their debts in a manner akin to municipal debt restructuring under Chapter 9 of the bankruptcy code. Compare 48 U.S.C. §§ 2161-2177 with 11 U.S.C. §§ 901-946. PROMESA also created the Financial Oversight and Management Board (the "Oversight Board") and vested it with powers to assist Puerto Rico and its instrumentalities in achieving fiscal responsibility and accessing capital markets. See 48 U.S.C.

---

[1] The Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241.

§§ 2121, 2141. These powers include the authority to designate governmental instrumentalities as eligible to petition for court-supervised debt restructuring under Title III of PROMESA and to act as the debtor's representative in such proceedings. 48 U.S.C. §§ 2121(d), 2162, 2175(b). With the Oversight Board's permission, PREPA filed for bankruptcy under Title III of PROMESA on July 2, 2017. As is customary in most types of bankruptcy proceedings, that filing triggered an automatic stay of most actions by creditors against PREPA. Id. § 2161(a) (incorporating 11 U.S.C. § 362(a)).

Appellants, to whom we will refer as "the bondholders," are holders and insurers of debt issued by PREPA and governed by a 1974 Trust Agreement. Under that Trust Agreement, PREPA pledged to the bondholders its revenues to repay over time the money PREPA acquired by issuing the bonds, plus interest. On July 3, 2017, PREPA defaulted on its payments. The bondholders accuse PREPA of breaching a promise to seek a rate increase sufficient to cover debt payments, of failing to collect on customer accounts, and of mismanaging operations. For these reasons, the bondholders asked the district court overseeing the Title III bankruptcy (the "Title III court") for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), incorporated into PROMESA by 48 U.S.C. § 2161(a), so that they could file suit to vindicate their right under territorial law to have a receiver appointed to manage PREPA

- 4 -

and seek a rate increase sufficient to cover debt servicing.  See P.R. Laws Ann. tit. 22, § 207(a) (establishing right of PREPA bondholders to a receiver in the event of default).

The Title III court denied the bondholders' request for relief from the automatic stay.  It reasoned, first, that PROMESA section 305 ("Section 305"), codified at 48 U.S.C. § 2165 and modeled after section 904 of the municipal bankruptcy code, 11 U.S.C. § 904, prohibited the Title III court "from transferring control of PREPA's management and property to a receiver without the Oversight Board's consent."  Second, it concluded that PROMESA section 306 ("Section 306"), codified at 48 U.S.C. § 2166, which gives the Title III court exclusive jurisdiction over the debtor's property, also prevented it from "ced[ing] jurisdiction of PREPA's property in the form of operating assets and revenues to another court."  Third, and in the alternative, the Title III court concluded that "cause" did not exist under 11 U.S.C. § 362(d)(1) to lift the stay because the balance of harms cut against the relief requested.

**II.**

We address first the limitation imposed by Section 305. That section provides:

> [N]otwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with-- (1) any of the

> political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property.

48 U.S.C. § 2165. In an effort to dispose quickly of that limitation, the bondholders cite two California municipal bankruptcy cases for the proposition that by allowing the debtor to file a Title III petition, the Oversight Board consented carte blanche to the full exercise of the Title III court's powers. See Alliance Capital Mgmt. L.P. v. Cty. Of Orange (In re Cty. of Orange), 179 B.R. 185, 190 (Bankr. C.D. Cal. 1995) (noting that county had consented to court's jurisdiction to order adequate protection, without clarifying the nature of that consent); Ass'n of Retired Emps. of Stockton v. City of Stockton (In re City of Stockton), 478 B.R. 8, 22 (Bankr. E.D. Cal. 2012) (characterizing the consent in Cty. of Orange as consent under 11 U.S.C. § 904 by virtue of having filed the bankruptcy petition). We reject this approach because it would render Section 305 a nullity; consent would always exist because Section 305 only applies in Title III cases, and in those cases, the Oversight Board must approve the debtor's filing. See 48 U.S.C. § 2164(a); see also id. § 2124(j).

Anticipating the possibility that this "consent" argument would fail, the bondholders also urge a more nuanced reading of Section 305 as limiting only what the Title III court can itself directly order. The Title III court disagreed. It read

- 6 -

Section 305 as not only preventing the Title III court from directly interfering with the listed powers and properties of PREPA, but also from indirectly interfering by issuing an order for the purpose of allowing another court to engage in any such interference, at least when the relief sought is the appointment of a receiver. The Title III court reasoned that Section 305 and other PROMESA provisions create a structure that is "protective of the autonomy of public entities engaged in debt adjustment proceedings." It also read the word "otherwise" in Section 305 as prohibiting the Title III court from indirectly doing (i.e., allowing others to do) what it could not directly do.[2]

We agree with the bondholders that Section 305 does not tie the Title III court's hands quite so much as that court found it did. Our reasoning begins with the statutory text. The text of Section 305 trains on the powers of "the court," plainly the Title III court. It states specifically what that court may not do: "interfere with" certain powers and assets of the debtor "by any stay, order, or decree." The bondholders' principal request for relief does not ask the Title III court to issue any such stay, order, or decree that itself interferes with the debtor's powers or assets. Rather, the bondholders ask the Title III court to

_____

[2] As the Title III court noted, 11 U.S.C. § 105(b), incorporated by PROMESA section 301, 48 U.S.C. § 2161(a), contains language prohibiting the Title III court from appointing a receiver directly.

stand aside -- by lifting the stay -- to allow another court under Commonwealth law to decide whether to do what the Title III court is assumed not to be able to do.  Nothing in that text plainly calls for us to read a prohibition on interference by the Title III court so broadly as to encompass an action that might allow another court to decide whether to interfere with the powers or properties of the debtors.

The statute's use of the word "otherwise" does not alter our reading.  The word "otherwise" serves not as a catchall for broadly defining what the Title III court cannot do.  Rather, it broadly defines where the Title III court may not interfere:  "in the case or otherwise."  In this manner, it makes clear that the Title III court cannot issue an order of interference, for example, when deciding disputes under its "related to" jurisdiction.  See 48 U.S.C. § 2166(a)(2) (Title III court has original but not exclusive jurisdiction over civil proceedings "arising in or related to cases under" PROMESA); see also Celotex Corp. v. Edwards, 514 U.S. 300, 307-08 & 307 n.5 (1995) (identical provision for bankruptcy code gives bankruptcy court broad "related to" jurisdiction over suits between third parties that have an effect on the debtor's property).

Our interpretation of the text of Section 305 secures even firmer footing when grounded in context because Title III of PROMESA also incorporates section 362(d)(1) of the bankruptcy

- 8 -

code. 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. § 362). That section says that the court "shall" provide relief from the automatic stay "for cause, including the lack of adequate protection of [a creditor's] interest in property." 11 U.S.C. § 362(d)(1). In so providing, section 362(d)(1) guards against the possibility that the automatic stay could deprive a creditor of its property interest by precluding the creditor from exercising any rights it possesses to protect that interest from destruction. See Note Holders v. Large Private Beneficial Owners (In re Tribune Co. Fraudulent Conveyance Litig.), 818 F.3d 98, 108–09 (2d Cir. 2016).

If we were nevertheless to read Section 305 broadly as barring the Title III court from lifting the automatic stay as otherwise allowed by section 362(d)(1) to enable another court to take action interfering with the debtor's property, we would effectively wipe out section 362(d)(1) whenever the creditor needed protection of its interest in that property.[3] The creditor would be left to stand by helplessly as the debtor spent the creditor's collateral, leaving the debtor entirely unsecured. As we have previously said, we would "doubt the constitutionality of" a rule that would allow a debtor to "expend every penny of the Movants' collateral, leaving the debt entirely unsecured." Peaje

---

[3] So, too, would we effectively eliminate subsections (3) and (4), and potentially (2), of 11 U.S.C. § 362(d).

- 9 -

Investments LLC v. García-Padilla, 845 F.3d 505, 511–12 (1st Cir. 2017) ("Peaje I"). Such a marked change in the status quo ante undercutting creditor rights, see United States v. Whiting Pools, Inc., 462 U.S. 198, 207 (1983) (describing rights and treatment of secured creditors in bankruptcy, including right to adequate protection), would be an ambitious undertaking unlikely to have been implemented by Congress without some discussion and expression of awareness.

The Title III court did try to deflect these problems by stating that its refusal to lift the stay arose in the context of a request for a receiver, certainly a robust form of interference with the debtor's finances and property. The implication -- which the debtor's brief makes express -- is that perhaps the Title III court would lift the stay to allow another court to provide some other type of protection of collateral. But neither the Title III court nor the debtor points to any toehold in the language of Section 305 that would accommodate a distinction allowing the Title III court to lift the stay to allow another court to interfere with the debtor's property sometimes but not others. Either Section 305 only bars the Title III court itself from interfering, or it bars that court also from lifting the stay to allow another court to do that which it cannot do. And it is only the latter, broader possibility that creates a situation in which

the creditor is deprived of any means of protecting its property interest.

The Title III court also pointed out that Section 305 would not bar section 362(d) relief when the Oversight Board consents to the requested relief.  But the principal aim of section 362(d)(1) is to protect the creditor when protection is needed, which is customarily when the debtor is not obliging.  In short, saying that a creditor can get relief from the stay when the debtor's representative consents effectively wipes out section 362(d)(1) precisely when it is most likely needed.

We also find no inconsistency between the apparent purpose served by Section 305 and a reading of that section as only barring the Title III court itself from directly interfering with the debtor's powers or property.  Like the Title III court, we read Section 305 as respectful and protective of the status of the Commonwealth and its instrumentalities as governments, much like section 904 of the municipal bankruptcy code respects and protects the autonomy of states and their political subdivisions. See 11 U.S.C. § 904.  When a bankruptcy or Title III court acts directly, it impinges on that autonomy.  But when it merely stands aside by lifting the automatic stay, it allows the processes of state or territorial law to operate in normal course as if there were no bankruptcy.

Finally, the limited case law on this subject provides no holdings or reasoning that call for a contrary interpretation of Section 305. Other courts have had occasion to pass on the plain meaning of 11 U.S.C. § 904, but only in the context of considering the bankruptcy court's ability to interfere directly with the powers, property, and revenues of the debtor. In Detroit's recent bankruptcy case, the Sixth Circuit held that the "plain language [of section 904] expressly prohibits the bankruptcy court from" ordering the city's water department to restore service or institute a water affordability plan for residents. Lyda v. City of Detroit (In re City of Detroit), 841 F.3d 684, 696 (6th Cir. 2016). Likewise, in municipal bankruptcy proceedings for the city of Stockton, California, the bankruptcy court determined that section 904 prevented it from ordering the city to continue paying for the health benefits of retired city employees, reasoning that section 904 is a like a "clean-up hitter in baseball" and limits the court's authority "absolute[ly]" when applicable. In re City of Stockton, 478 B.R. at 20. Though these interpretations express a broad view of what the bankruptcy court in a municipal bankruptcy may not itself do without the debtor's consent, they make no effort to address whether and to what extent the bankruptcy court may lift the stay to allow another court to do what the bankruptcy court cannot do.

For these reasons, we hold that Section 305 does not prohibit as a matter of course the Title III court from lifting the stay when the facts establish a creditor's entitlement to the appointment of a receiver in a different court in order to protect a creditor's collateral should that protection otherwise be necessary and appropriate. Although we share the Title III court's concerns about the deleterious impact that a robust receivership outside the Title III court's control might have on the efforts of the Title III court to consolidate and adjust the debtor's affairs, those concerns are best addressed in deciding whether, precisely to what extent, and for what purpose relief from the automatic stay might be granted. In other words, it might be possible to grant tailored relief for the creditor to seek a receivership provided that the receiver only take specific steps necessary to protect the creditor's collateral. Further, concerns about moving the locus of the debtor's protections outside the Title III court are greatly ameliorated by the fact that the Oversight Board itself can always, through consent, opt for a regime held more tightly within the federal forum's direct control.

## III.

We turn next to the Title III court's holding that the exclusive jurisdiction provision contained in PROMESA section 306(b), 48 U.S.C. § 2166(b), operates to prohibit a court from entering an order to lift the stay upon a determination of

inadequate protection if the relief sought is the appointment of a receiver. Unlike Section 305, Section 306's exclusive jurisdiction over property rule is not a provision specially crafted for municipal or territorial bankruptcies. Rather, it is the general rule for bankruptcies. See 28 U.S.C. § 1334(e). In short, Section 306(b) provides that bankruptcy courts acquire exclusive jurisdiction over a debtor's property.

This grant of exclusive jurisdiction has to our knowledge never limited the bankruptcy court's power to allow others to act on the debtor's property with the permission of the bankruptcy court. For example, bankruptcy courts routinely grant leave to allow a creditor to sell a debtor's property without threat to the exclusive jurisdiction rule. See, e.g., Catalano v. Comm'r of Internal Revenue, 279 F.3d 682, 687 (9th Cir. 2002) (order lifting stay to permit bank to foreclose on residential property did not extinguish the estate's interest in the property or constitute abandonment of the property).

Allowing the Title III court to permit or enlist others to take action with the court's permission enhances rather than limits the control given to the Title III court by Section 306. See In re Ridgemont Apartment Assocs., 105 B.R. 738, 741 (Bankr. N.D. Ga. 1989) (lifting stay for creditor to obtain a receiver to collect some income from debtor's rental property did not cede exclusive jurisdiction over the debtor's property, as Congress

gave "considerable flexibility" to bankruptcy courts to protect both creditors and debtors). Moreover, were we to read Section 306 as precluding the Title III court from allowing a Commonwealth court to protect a creditor's collateral from actions of the debtor, we would create the same problem that our reading of Section 305 sought to avoid: The creditor would have no forum that could provide any protection. Section 306 is better understood as a housekeeping provision keeping the bankruptcy process ultimately under the prerogative of the Title III court. Even when the Title III court lifts the stay, that prerogative remains. Thus, we conclude that Section 306(b) does not prevent a Title III court from, after a determination of "cause," lifting the stay to allow a creditor to seek the appointment of a receiver in another court.

## IV.

The Title III court also included a brief section in its order stating, in the alternative, that it would deny the requested relief from the automatic stay even if it had the power to do otherwise. In so stating, it identified the impediments that a receiver appointed outside the adjustment proceeding would pose to the successful conclusion of that proceeding. The Title III court, however, undertook no assessment of the extent to which any collateral of the bondholders might be irreversibly harmed in the interim, or whether PREPA could demonstrate that it was adequately

- 15 -

protecting that interest, factors a court would ordinarily examine and weigh. See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 370 (1988) (adequate protection means that the value of the creditor's interest in the collateral must be protected from diminution while the property is being used or retained during the bankruptcy proceeding); Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999) (burden falls first on the creditor to make an initial showing of cause, then on the debtor to show lack of cause). It is true that the bondholders took the position that their motion could be decided "on the basis of law and limited undisputed facts." But one of the predicate legal issues was whether and to what extent the bondholders possessed property interests. The Title III court found it unnecessary to decide that issue. We, in turn, decline to do so now without first having the issue framed by proceedings in the Title III court. Cf. SW Boston Hotel Venture, LLC v. City of Boston (In re SW Boston Hotel Venture, LLC), 748 F.3d 393, 402 (1st Cir. 2014) (bankruptcy court fact-finding is reviewed for clear error); see also Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.), 369 B.R. 752, 757 (B.A.P. 1st Cir. 2007) (review of stay relief order is for abuse of discretion).

We agree with the parties that the factors identified by the Second Circuit in Sonnax and recited by the Title III court

provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum. See Sonnax Indus. v. Tri Component Products Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1286 (2d Cir. 1990). But the Title III court's order does not make clear what use it made of these guideposts beyond a high-level consideration of the balance of the harms. It also made no findings regarding what limitations it might be able to impose upon the receiver.

Additionally, to say that the potential harm to the debtor and the Title III process "far outweighs the temporary impediments imposed on the bondholders" would also seem to require some assessment of the pre-petition value of the bondholders' collateral (if any exists), whether the bondholders face a threat of uncompensated diminution in such value, whether the bondholders are seeking the protection of existing collateral or, instead, the creation of new collateral, and what, if any, adequate protection PREPA can offer short of a receiver being appointed to manage it if protection is warranted. See United Sav. Ass'n of Texas, 484 U.S. at 370; Lend Lease v. Briggs Transp. Co. (In re Briggs Transp. Co.), 780 F.2d 1339, 1344 (8th Cir. 1985) (debtor can propose a form of relief to provide adequate protection of a secured creditor's interest in property). Without more to understand what the Title III court weighed on each side of the balance of the harms, we cannot say whether there was adequate support upon which

to rest the Title III court's exercise of its discretion in finding that "cause" did not exist.

The Title III court did observe in its order of September 14, 2017, that the bondholders only faced "temporary impediments." Much time has since passed, and the situation on the ground -- and at PREPA -- has changed greatly since last September in the wake of Hurricanes Irma and Maria. Additionally, our decision today in Peaje Investments LLC v. Financial Oversight and Management Board for Puerto Rico (In re Financial Oversight and Management Board for Puerto Rico), Nos. 17-2165, 17-2166, 17-2167, confirms some of the basic ground rules that may govern the ascertainment and classification of security interests in this case. Having now clarified the legitimate questions raised concerning the effects of Section 305 and Section 306 of PROMESA, we think it best to allow the bondholders to file a new and updated request for relief from the automatic stay so that the parties and the Title III court can focus on the merits of that request free of any thought that the request is categorically precluded.

That being said, nothing in this opinion should be read as implying any decision concerning issues not expressly addressed in this opinion.

**V.**

For the reasons stated above, we vacate the order denying the bondholders' request for relief from the automatic stay and we

remand for further proceedings consistent with this opinion.  No

costs are awarded.