# United States Court of Appeals
## For the First Circuit

No. 07-1611

IN RE: ARCH WIRELESS, INC.; PAGING NETWORK, INC.,
Debtors.

ARCH WIRELESS, INC.; PAGING NETWORK, INC.,
Appellants,

v.

NATIONWIDE PAGING, INC.,
Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella, Circuit Judge,
Lipez, Circuit Judge,
and Gibson,* Senior Circuit Judge.

T. Christopher Donnelly, with whom Adam B. Ziegler and Donnelly, Conroy & Gelhaar, LLP were on brief, for appellants.
Lawrence P. Murray, with whom John F. Drew, Victor Bass, and Burns & Levinson LLP were on brief, for appellee.

July 23, 2008

---

*Of the Eighth Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  This appeal raises an important issue about the notice requirements of due process in a Chapter 11 bankruptcy proceeding.  The appellant, Arch Wireless, Inc. ("Arch"), is a corporation that received a discharge pursuant to a Chapter 11 reorganization plan.  It now seeks to enforce that discharge against the appellee, Nationwide Paging, Inc. ("Nationwide").  Nationwide is pursuing claims against Arch in state court, arguing that it did not receive proper notice of the bankruptcy proceedings and thus due process prevents the discharge injunction from barring its claims.  In support of its motion to hold Nationwide in contempt for pursuing its claims, Arch contends that Nationwide was not a "known creditor" at the time Arch filed for bankruptcy and, accordingly, was entitled only to publication notice of Arch's bankruptcy proceedings.  In the alternative, Arch claims that Nationwide's actual knowledge that Arch had filed for bankruptcy was sufficient to satisfy the requirements of due process.  For the reasons set forth below, we reject both of Arch's arguments and affirm the district court's denial of Arch's motion for contempt.

## I.

Arch, a supplier of paging network airtime and pagers, and its former subsidiary PageNet,[1] sold airtime and a large number of pagers to Nationwide.  Nationwide, in turn, used these pagers to

---

[1]PageNet merged with Arch in 2000.

supply paging services to its customers, including AT&T. In 2000, AT&T claimed that a large number of pagers it received were defective or defectively programmed. Nationwide turned to Arch to correct the problem. At around the same time, Nationwide began to allege billing errors on invoices from Arch, including multiple bills for the defective pagers that had been replaced or were in need of replacement.

In a series of letters and emails from September 2000 through September 2001, Nationwide identified and tried to resolve the billing errors. As discussed in greater detail below, the correspondence also described the defective pagers as a problem that may need to be resolved separately from the billing dispute.

Arch filed a Chapter 11 bankruptcy petition on December 6, 2001. Arch did not list Nationwide as a creditor on its bankruptcy schedules, and Nationwide never received any notices from Arch or the court regarding the proceedings. Nationwide did not file an appearance in the bankruptcy proceedings.

The bankruptcy court issued an order on February 5, 2002, setting March 29, 2002 as the bar date, i.e., the date by which all creditors should file proofs of claims in Arch's bankruptcy case, and ordering Arch to notify its creditors of the bar date. Notification was to be accomplished in two ways: 1) known creditors were to be mailed notices; and 2) notices would be published in the USA Today and the Wall Street Journal.

Arch's reorganization plan was confirmed on May 15, 2002. The confirmation order included a discharge injunction precluding all persons from asserting claims against Arch based on "any act, omission, transaction or other activity . . . that occurred prior to the Confirmation Date."

In June 2002, Arch began terminating Nationwide's airtime services for nonpayment. This led Nationwide to file suit in Massachusetts Superior Court, seeking a temporary restraining order preventing Arch from terminating its service, a declaratory judgment ascertaining how much Nationwide owed to Arch for prior bills, and damages under Massachusetts's unfair business practices statute, Mass. Gen. Laws ch. 93A ("Chapter 93A"), for harm caused by Arch's over-billing and defective pagers.

Nearly two years later, Arch realized that Nationwide's Chapter 93A claim amounted to a claim for $4 million in damages. At that point, Arch sent Nationwide a copy of the confirmation order discharging Arch's pre-confirmation debts and demanded that Nationwide withdraw its claims based on any events prior to the confirmation date. Nationwide refused.

Arch filed a motion for contempt in the bankruptcy court. The superior court stayed the proceedings, pending resolution of the contempt motion. The bankruptcy court denied Arch's motion, holding that Nationwide was a "known creditor" without sufficient notice and that, accordingly, due process concerns prevented the

discharge injunction from operating to extinguish Nationwide's claims. The district court affirmed. This appeal followed.

## II.

We independently review the bankruptcy court's decision, granting "[n]o special deference . . . to the district court's determinations." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994). The bankruptcy court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error. Id.

## A. Known Creditor

The Bankruptcy Rules require a debtor to list all of its creditors and requires that creditors be notified of key events in the bankruptcy proceeding. Fed. R. Bankr. 1007(a), 2002. The Bankruptcy Code broadly defines "creditors" to include all those who hold pre-petition "claims" against the debtor. 11 U.S.C. § 101(10)(A). A "claim" is broadly defined to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Id. § 101(5)(A).

For notice purposes, bankruptcy law distinguishes between "known creditors," who are entitled to receive direct notice of each stage in the reorganization proceedings, and "unknown creditors," for whom publication notice is sufficient. See City of

New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953); see also Chemetron Corp. v. Jones, 72 F.3d 341, 345-46 (3d Cir. 1995). Arch argues that Nationwide was an "unknown creditor," and thus publication of notice of the key dates in Arch's bankruptcy in the USA Today and Wall Street Journal was sufficient to permit the discharge injunction to extinguish Nationwide's pre-confirmation claims without offending Nationwide's right to procedural due process.

An "unknown creditor" is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 317 (1950); see also In re XO Commc'ns, Inc., 301 B.R. 782, 793 (Bankr. S.D.N.Y. 2003) (describing an "unknown creditor" as one whose claims are "merely conceivable, conjectural or speculative" (internal quotation marks omitted)). A "known creditor," by contrast, is one whose claims and identity are actually known or "reasonably ascertainable" by the debtor. Tulsa Prof'l Collection Servs. Inc. v. Pope, 485 U.S. 478, 490 (1988). A creditor is "reasonably ascertainable" if its claim can be discovered through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4 (1983). These efforts generally include "a careful search of the debtor's own records." In re Crystal Oil Co., 158 F.3d 291, 297 (5th Cir. 1998). Thus,

"in order for a claim to be reasonably ascertainable, the debtor must have in his possession . . . some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable." Id. On the other hand, there is no requirement that the debtor have information suggesting the financial magnitude of the claim. See 11 U.S.C. § 101(5)(A) (defining "claim" to include both liquidated and unliquidated liabilities).

The bankruptcy court rejected Arch's contention that Nationwide's claim was "unknown." The court found that Nationwide was a "known creditor" because its claim against Arch was reasonably ascertainable from the correspondence between the two companies. For example, in a September 2001 email, Nationwide offered to "arrive at a fixed dollar solution" to the billing dispute, but warned that the fixed dollar amount "does not take into consideration any issues of pagers not working." After describing the billing issues, the email went on:

> Finally, there is the need to address the problem of the lost business we suffered because of PageNet . . . . I don't know what to say PageNet owes us for that, but I do know that PageNet cost itself a substantial piece of business, and set back Nationwide's growth an untold amount. Frankly, it may not be possible to resolve this issue at the same time as we resolve all of the billing issues, but I wanted you to at least be aware of these concerns.

Another email, sent by Nationwide to PageNet in November 2000, expresses similar concerns:

> Virtually all of the equipment that PageNet has sold to us has arrived at our office with superfluous programming that detracts from the pager's performance. . . . It has now cost us a substantial customer. The AT&T project manager for paging has taken our company out of their automated ordering process. She told me that she was doing this as a result of the faulty equipment, and the paging just not working. These were PageNet pagers. We need to address this problem, and our loss caused by PageNet.

The bankruptcy court characterized this correspondence as clearly articulating "Nationwide's belief that [Arch] was liable to Nationwide for affirmative compensation and offsets on its accounts." Because these writings were contained within Arch's records at the time of the bankruptcy filing, the bankruptcy court reasoned that it "would have required no Herculean efforts, but merely a reasonable inquiry" into those records to ascertain Nationwide's claim and hence its status as a "creditor." Accordingly, the court concluded that Nationwide was a "known creditor" at the time the Chapter 11 petition was filed and was entitled to more than mere publication notice.

Arch argues that "any purported claims against it by Nationwide were speculative and conjectural, at best." Arch characterizes its correspondence with Nationwide as documenting merely an "on-going billing dispute" with a customer with more than $450,000 in unpaid invoices. Arch notes that its own books carried

an account receivable owed to it by Nationwide and that Nationwide's books did not carry a claim against Arch as an asset. Arch characterizes the bankruptcy court as having ignored these facts and asserts that the court "mistook Arch's familiarity with Nationwide for familiarity with a claim purportedly held by Nationwide."

We disagree. The "known creditor" determination made by the bankruptcy court is subject only to clear error review.[2] The bankruptcy court relied, not on Arch's familiarity with Nationwide, but rather on Nationwide's specific and repeated written assertion of claims for lost business, harm to reputation, and damages caused by the defective pagers, as well as the billing errors. The amount of money Nationwide would claim was certainly unknown, but Nationwide's emails could reasonably be understood to assert an entitlement to affirmative compensation for the defective pagers.

---

[2]On appeal, Arch concedes that the proper standard is clear error. However, as the district court noted, there seems to be some difference of opinion among various courts as to whether the "known creditor" determination is reviewed de novo or for clear error. Compare In re J.A. Jones, Inc., 492 F.3d 242, 250 n.8 (4th Cir. 2007) (reviewing the "known creditor" determination de novo but according the bankruptcy court's conclusions "substantial consideration") with Crystal Oil, 158 F.3d at 298 ("[T]his is entirely an issue of fact, and our standard of review is therefore one of clear error."). The issue is not so complex. The "known creditor" determination involves the application of a legal standard used in bankruptcy law to the facts of a particular case and thus "poses a mixed question of law and fact, which this court reviews for clear error unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved." In re Carp, 340 F.3d 15, 22 (1st Cir. 2003).

Therefore, we see no error in the bankruptcy court's determination that the correspondence asserted a "claim" under the Bankruptcy Code and made Nationwide's status as a "creditor" "reasonably ascertainable" by Arch. Accordingly, we affirm the determination that Nationwide was a "known creditor."

## B. Due Process

We next turn to Arch's argument that, even if Nationwide was a "known creditor," the discharge injunction should nonetheless bar Nationwide's claim because Nationwide had "actual knowledge" of Arch's bankruptcy proceedings. The bankruptcy court, in considering this argument, assumed that Nationwide's president, Peter Brown, was "generally aware of the bankruptcy filing in December 2001." His awareness apparently came from media reports and Brown's familiarity with Arch as one of his company's two suppliers. However, the bankruptcy court found no evidence that Nationwide had any actual knowledge of the bar date, the confirmation hearing, or the contents of the confirmation plan.

The Bankruptcy Rules specify that known creditors must receive: (1) notice of deadlines for filing proofs of claims (bar date), Fed. R. Bankr. 2002(a)(7); (2) a copy of the reorganization plan, Fed. R. Bankr. 3017(d); (3) notice of the confirmation hearing, Fed. R. Bankr. 3017(d); and (5) the confirmation order, Fed. R. Bankr. 2002(f). Arch did not provide and Nationwide did not receive any of these notices.

-10-

The discharge injunction provisions in the Code are written unequivocally and encompass all pre-confirmation claims, known or unknown, without reference to the notice provided to the claimants, see 11 U.S.C. §§ 524, 1141(d), and neither the Bankruptcy Code nor the Rules specify any consequence for failure to comply with the notice rules. However, the discharge injunction could not abolish the property rights of creditors in their claims, regardless of notice, without running afoul of creditors' due process rights. See Chemtron Corp., 72 F.3d at 346 (characterizing inadequate notice as a "defect which precludes discharge of a claim" because of due process concerns). Thus, because the Code and Rules themselves do not provide an exception to the discharge injunction when notice rules are violated, we must look to due process principles to evaluate the claim of a known-but-unnotified creditor that the discharge injunction does not bar the creditor's claims.

> The general rule is that due process requires:
>
> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

Mullane, 339 U.S. at 314 (citations omitted). Therefore, as we conduct our analysis, we are chiefly concerned with determining what constitutes the "required information" that must be

-11-

"reasonably conveyed" to the creditor against whom the debtor wishes to enforce the discharge injunction.

Arch urges us to adopt a rule that the "required information" includes only actual, timely knowledge, however acquired, that a corporation has filed for bankruptcy under Chapter 11. Thus, Arch argues that Nationwide's actual and timely knowledge that Arch had filed for bankruptcy was sufficient to satisfy due process requirements and permit Nationwide to be bound by the discharge injunction because such actual knowledge of the proceedings put Nationwide on inquiry notice of the bar date. In other words, Arch argues that Nationwide bore the burden of investigating Arch's proceedings to determine whether and when it had to present its claim to the bankruptcy court. Nationwide could not, Arch argues, intentionally, strategically sit on its rights.

Arch's argument is directly at odds with the view we adopted in In re Intaco Puerto Rico, Inc., 494 F.2d 94, 99 (1st Cir. 1974), as well as the view of at least five of our sister circuits, Fogel v. Zell, 221 F.3d 955, 964 (7th Cir. 2000); In re Maya Constr. Co., 78 F.3d 1395, 1399 (9th Cir. 1996); In re Unioil, 948 F.2d 678, 684 (10th Cir. 1991); In re Spring Valley Farms, Inc., 863 F.2d 832, 835 (11th Cir. 1989); In re Harbor Tank Storage Co., 385 F.2d 111, 115 (3d Cir. 1967). But see In re Christopher, 28 F.3d 512, 518 (5th Cir. 1994). The majority rule set forth in these cases is that "the fact that the creditor may . . . be

generally aware of the pending reorganization, does not of itself impose upon him an affirmative burden to intervene in that matter and present his claim. . . . [T]he creditor has a right to assume that proper and adequate notice will be provided before his claims are forever barred." Intaco, 494 F.2d at 99.

This rule, in turn, is based upon the Supreme Court's holding in City of New York. 344 U.S. at 296-97. In that case, the Court determined that, as to a known creditor, publication notice fell short of the requirement in § 77(c)(8) of the former Bankruptcy Act, that "[t]he judge shall cause reasonable notice of the period in which claims may be filed, . . . by publication or otherwise."[3] 344 U.S. at 296 (quoting former 11 U.S.C. § 205(c)(8)). The Court added that § 77(c)(4) was designed "to enable the court to serve personal notices on creditors [by providing] that '[t]he judge shall require' proper persons to file in the court a list of all known creditors, the amount and character of their claims and their last known postoffice

---

[3]The Court explained that

> [n]otice by publication is a poor and sometimes hopeless substitute for actual service of notice. . . . But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication. The case here is different. No such excuse existed to justify subjecting New York's claims to the hazard of forfeiture arising from 'constructive notice' by newspaper.

City of New York, 344 U.S. at 296 (internal citations omitted).

-13-

addresses." Id. As a known creditor, New York City should have been included on such a list and mailed the pertinent notices, but that did not happen. Id. The Court held that the consequence of this failure of notice was that the discharge injunction was inapplicable to the unnotified creditor, despite the creditor's general knowledge that the debtor had filed for reorganization. Id. at 297. The Court explained:

> Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory "reasonable notice" will be given them before their claims are forever barred.
> . . .
> The statutory command for notice embodies a basic principle of justice – that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights.

Id. In Intaco, we held that the same logic applied when the debtor failed to comply with the notice requirements set forth in Chapter X of the former Bankruptcy Act. 494 F.2d at 99.

Arch resists the logic of City of New York and Intaco on a number of grounds. First, Arch argues that the cases were decided on statutory rather than constitutional grounds and that the statutes under which they were decided are no longer in force. However, the statutory provisions in those cases closely parallel

-14-

the current Bankruptcy Rules for notice – placing the burden on the debtor to list its known creditors and personally notify them of specific key dates in the proceedings. Just like the current schema, the statutes at issue in those cases contained unequivocal discharge provisions and did not specify the consequences of a failure to comply with the notice requirements. The Court's conclusion that the discharge provision was ineffective against an unnotified creditor "clearly is not grounded in goals unique to the former bankruptcy act." Spring Valley Farms, 863 F.2d at 835.

Also, Arch fails to appreciate the relationship between statutory provisions that promise notice of a certain kind and constitutional due process.[4] The statutory notice requirement shapes the contours of that constitutional due process analysis because it informs the reasonable expectations of creditors. City of New York, 344 U.S. at 297 ("[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred."). Thus, it is wrong to argue, as Arch does, that City of New York was solely a statutory decision. Instead, the decision was informed by due process concerns, Spring Valley Farms,

---

[4]The Second and Fifth Circuits have described City of New York as having been decided on statutory rather than constitutional grounds. In re Medaglia, 52 F.3d 451, 456 (2d Cir. 1995); Christopher, 28 F.3d at 517. That characterization misses the critical relationship between the statutory notice provisions and constitutional due process protections.

-15-

863 F.2d at 835, described by the Court in <u>City of New York</u> as "a basic principle of justice – that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights," 344 U.S. at 297.

Second, Arch notes that actual knowledge of the creditors meeting has been deemed relevant in Chapter 7 and Chapter 13 proceedings. Arch argues that it is illogical to adopt a rule that distinguishes between the various bankruptcy chapters with regard to the amount of constitutional notice that is due. However, as the Ninth Circuit has explained, the reason for the distinction is the difference in claims procedures under the different chapters:

> In contrast to the rule governing proofs of claims in a Chapter 11 suit, which instructs the court to fix a proof of claims deadline and permits the court to extend that deadline "for cause shown," the rule governing Chapter 7 and 13 proceedings provides that proofs of claim shall be filed within 90 days of the first creditors meeting and specifies limited exceptions. Thus, once the creditors [in Chapter 7 and 13 cases] had received notice of the creditors meeting, they had effective notice that proofs of claim were due within 90 days, unless very limited exceptions applied. In contrast to creditors in a Chapter 7 or 13 case, even if [a Chapter 11 creditor] had received notice of a creditors meeting or any other formal notice, . . . he still would not have known when the deadline for filing proofs of claims was, and therefore, cannot be said to have been given any notice.

<u>Maya Constr.</u>, 78 F.3d at 1399 (citations omitted). Other circuits that have considered this issue have adopted the same rationale for the distinction. <u>See</u> <u>Fogel</u>, 221 F.3d at 964; <u>Unioil</u>, 948 F.2d at

683.  As the Seventh Circuit describes it, the general rule "is that the only knowledge required is knowledge of a critical stage of the proceeding from which the bar date can be computed, not of the bar date itself."  Fogel, 221 F.3d at 964 (citation omitted).  Unlike in Chapter 7 and 13 proceedings where the bar date may be roughly computed based on one's knowledge of the creditors meeting, there is simply no way to "compute" a bar date in a Chapter 11 proceeding because the date is set at the discretion of the court.[5]  Accordingly, the distinction between Chapter 7 and 13 on the one hand and Chapter 11 on the other is reasonable.

Third, Arch points out that in cases involving an individual debtor, a known creditor with actual knowledge of a bankruptcy case is bound by the discharge whether or not it received formal notice.  This outcome is a result of 11 U.S.C. § 523(a)(3), which excepts unlisted debts from discharge "unless such creditor had notice or actual knowledge of the case in time for such timely filing," and applies only in cases involving individual

---

[5]The differing rules regarding bar date under Chapters 7 and 11 can be explained by reference to the purposes of the two types of bankruptcy.  The Supreme Court observed that "[w]hereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors."  Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 389 (1993).  Under Chapter 7, debtors and creditors alike benefit from the structured and predictable schedule set forth in the Code.  On the other hand, corporate reorganizations are often long and drawn-out, requiring that the court retain flexibility in setting dates for various stages of the proceedings.  See Medaglia, 52 F.3d at 457.

debtors. This provision has been held to comply with constitutional due process principles. See, e.g., In re Medaglia, 52 F.3d 451, 455 (2d Cir. 1995). Accordingly, Arch argues, due process must not require anything more than general knowledge of the bankruptcy case when a corporate debtor is involved because such knowledge satisfies due process requirements when an individual debtor is involved.

Arch's argument is flawed. As we explained above, the statutory framework shapes the contours of due process. Creditors whose debtors are individuals do not have a "'right to assume that the statutory "reasonable notice" will be given them before their claims are forever barred'" because the statute itself warns that "actual knowledge of the 'case'" will be enough to permit the discharge injunction to operate against their claims. Medaglia, 52 F.3d at 456-57 (quoting City of New York, 344 U.S. at 297). The Second Circuit in Medaglia observed that "a constructive notice provision 'is ordinarily a creature of statute; courts usually will not impose the onerous burden of constructive notice on a litigant when it has not been imposed by the legislature.'"[6] Id. (quoting In re New York, N.H. & H.R. Co., 197 F.2d 428, 433 (2d Cir. 1952) (Frank, J., dissenting), rev'd sub nom. City of New York v. New

_____

[6]The Second Circuit characterizes § 523(a)(3)(B) as a "constructive notice" provision because, in cases involving an individual debtor, it deems "actual notice of the case" to be constructive notice of the particular events and deadlines in the case.

-18-

<u>York, N.H. & H.R. Co.</u>, 344 U.S. 293 (1953), and noting that, on appeal, the Supreme Court in <u>City of New York</u> effectively adopted this rationale from Judge Frank's dissent below).  But the <u>Medaglia</u> court explained that with regard to <u>individual</u> debtors:

> The statute itself, in § 523(a)(3)(B), does contain a constructive notice clause that makes crystal clear that a creditor with timely, actual knowledge of the "case" does <u>not</u> have the "right to assume" that it will receive formal notice before its claims are barred.  Section 523(a)(3)(B) specifically qualifies any right to assume receipt of formal notice.

<u>Id.</u> at 457-58 (emphasis in original).  Accordingly, a creditor of an individual debtor is on notice of the burden-shift that requires him to actively participate once he has general knowledge of the proceedings.  No such statutory burden-shift is present for a creditor of a corporation.  As a result, the due process requirements may vary as between creditors of individuals and corporations because the statute itself puts creditors on notice of this variance.[7]

---

[7]As we noted in <u>Intaco</u>, a case could arise in which, although the required notices were not sent, the creditor in fact had actual knowledge "not merely of the general pendency of the . . . reorganization, but of each particular development therein to which formal notice would be required."  494 F.2d at 99 n.11.  In such a case, we might conclude that the creditor's due process rights were not violated, despite the debtor's failure to comply with notice rules, because the creditor had <u>actual</u> knowledge of the critical dates about which he could expect to be notified.  <u>Id.</u>  Those are not the facts in this case.

Fourth, Arch argues by analogy to civil forfeiture and tax lien proceedings where actual knowledge of the proceedings has been held to be sufficient to satisfy due process requirements. See, e.g., United States v. One Star Class Sloop Sailboat, 458 F.3d 16, 22 (1st Cir. 2006); United States v. Sayer, 450 F.3d 82, 87 (1st Cir. 2006). However, as noted above, the due process inquiry is too closely tied to the statutory framework to support this level of generalization. The creditor's "right to assume" that a particular level of notice will be given is based upon the notice provisions in the applicable statute. The civil forfeiture and tax lien statutes at issue in the cases cited by Arch do not have notice provisions or bar date procedures that closely parallel those in the Bankruptcy Code and Rules. As a result, Arch's analogy is unavailing.

In sum, Arch has failed to distinguish this case from Intaco and is bound by the rule that a known creditor's general awareness of a pending Chapter 11 reorganization proceeding is insufficient to satisfy the requirements of due process and render the discharge injunction applicable to the creditor's claims. Finding no clear error in the bankruptcy court's determination that Nationwide was a "known creditor" with no more than a general awareness of Arch's bankruptcy, we hold that the discharge injunction does not apply to Nationwide's pre-confirmation claim.

Affirmed.

-20-