# United States Court of Appeals
# For the First Circuit

No. 24-1822

BELIA ARLENE-OCASIO; EFRAÍN COLÓN-DAMIANI,

Plaintiffs, Appellees,

v.

COMISIÓN ESTATAL DE ELECCIONES; JORGE RIVERA RUEDA, in the
official capacity as Acting President of the Comisión Estatal
de Elecciones,[*]

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Gelpí, Hamilton,[**] and Aframe,
Circuit Judges.

Omar J. Andino Figueroa, with whom Luis R. Román-Negrón, Román
Negrón Law, PSC, and Fernando Figueroa-Santiago, Solicitor General
of Puerto Rico, were on brief, for appellants.

Ryanne E. Perio, with whom George W. Shuster, Jr., Thomas B.
Davis, Wilmer Cutler Pickering Hale and Dorr LLP, Fermín L.
Arraiza-Navas, American Civil Liberties Union Foundation of Puerto

---

[*]     Pursuant to Fed. R. App. 43(c)(2), Jorge Rivera Rueda
has been substituted for Jessika Padilla as President of the
Comisión Estatal De Elecciones.

[**]     Of the Seventh Circuit, sitting by designation.

Rico, Adriel I. Cepeda Derieux, Victoria Ochoa, Theresa J. Lee, Sophia Lin Lakin, and American Civil Liberties Union Foundation were on brief, for appellees.

————————————

April 1, 2026

————————————

**AFRAME**, <u>Circuit Judge</u>.  Following a favorable judgment against the Comisión Estatal de Elecciones ("CEE") and the President of CEE in his official capacity (collectively, "Defendants") under 42 U.S.C. § 1983, Plaintiffs Belia Arlene-Ocasio and Efraín Colón-Damiani obtained an award of almost $65,000 in attorneys' fees under 42 U.S.C. § 1988.  Defendants subsequently filed a "Notice of Injunction" with the district court, asserting that Plaintiffs were enjoined from collecting their fee award under Puerto Rico's financial reorganization plan, which was confirmed pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").  The district court rejected Defendants' contention, concluding that the fee award was unrelated to Puerto Rico's debt restructuring.  We reverse.

**I.**

**A.**

In 2016, Congress enacted PROMESA to address Puerto Rico's financial crisis.  Pub. L. No. 114-187, 130 Stat. 549 (2016) (codified at 48 U.S.C. §§ 2101-2241).  Title III of PROMESA created a debt restructuring process "akin to municipal debt restructuring under Chapter 9 of the bankruptcy code."  <u>In re Fin. Oversight & Mgmt. Bd. for P.R.</u>, 899 F.3d 13, 18 (1st Cir. 2018).  On May 3, 2017, Puerto Rico filed a debt restructuring petition under Title III ("the Title III petition").  <u>Municipality of San Juan</u> v. <u>Puerto</u>

- 3 -

Rico, 919 F.3d 565, 571 (1st Cir. 2019). After nearly five years, on January 18, 2022, the court charged with overseeing the Title III proceedings (the "Title III Court") issued a Confirmation Order ratifying Puerto Rico's Plan of Adjustment (together, the "Confirmed Plan") to restructure its debt. See In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. 1 (D.P.R. 2022). The Confirmed Plan took effect on March 15, 2022 (the "Effective Date"). In re Fin. Oversight & Mgmt. Bd. for P.R., 32 F.4th 67, 74 (1st Cir. 2022).

Under the Confirmed Plan, all claims, causes of action, and debts against Puerto Rico that arose prior to the Effective Date, and that were not otherwise addressed by the Plan, were "discharge[d] and release[d] . . . pursuant to sections 524 and 944 of the Bankruptcy Code." In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 38, 232; see also 11 U.S.C. § 944(b)(1); 11 U.S.C. § 524(a)(1). The Confirmed Plan likewise enjoined those holding discharged claims from continuing any action against Puerto Rico and its instrumentalities, including the collection or recovery of any judgment or award. See In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 41-42, 234-35; see also 11 U.S.C. § 524(a)(2).

For a claim to be addressed by the Title III proceedings, claimants were generally required to file a "proof of claim" with the Title III Court by a specific "bar date," or deadline. In re

- 4 -

Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 82, 87. Such deadlines "ensure that the promise of a fresh start is not illusory, as claims not filed and addressed in the bankruptcy cannot be asserted later against the reorganized debtor." Ellis v. Westinghouse Elec. Co., LLC, 11 F.4th 221, 232 (3d Cir. 2021). As is relevant here, holders of a particular type of claim called an "administrative expense" were required to file proof of their claim within ninety days of the Confirmed Plan's Effective Date on March 15, 2022.[1] In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 32, 81. Administrative expenses are claims against the debtor that arise after the debtor files its petition for bankruptcy and that constitute the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2); see also In re Fin. Oversight & Mgmt. Bd. for P.R., 7 F.4th 31, 38 (1st Cir. 2021) (noting that Congress incorporated §§ 503 and 507(a)(2) into PROMESA under 48 U.S.C. § 2161(a)). Under the Confirmed Plan, administrative expenses that were not

---

[1] The June 13, 2022, bar date for administrative expenses was subsequently extended to January 18, 2023, for select claims. See In re Fin. Oversight & Mgmt. Bd. for P.R., 781 F. Supp. 3d 1, 5 (D.P.R. 2025). Separately, we note that while we use the term "proof of claim," the Confirmed Plan uses both "proof of claim" and "request for payment." See, e.g., In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 32, 98; see also Ellis, 11 F.4th at 233 n.6 ("To be technical, a claimant files a 'request for payment' rather than a 'proof of claim' for an administrative expense claim."); 11 U.S.C. § 503(a) ("An entity may timely file a request for payment of an administrative expense . . . .").

filed by the bar date are considered "forever barred"; that is, the claimant may not recover from the debtor and the debtor is discharged of any further obligation to the claimant.  In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 32, 81.

**B.**

In August 2020, around three years after Puerto Rico filed its Title III petition, but over a year before the Confirmed Plan's Effective Date, Plaintiffs sued Defendants under 42 U.S.C. § 1983, raising constitutional claims about voting procedures for the 2020 general election.  The Complaint alleged that, given the health risks caused by COVID-19, Puerto Rico's voting policies and restrictions on early and absentee voting constituted an unlawful burden on the right to vote for those exceeding sixty years of age, in violation of the First and Fourteenth Amendments to the Constitution.  On September 11, 2020, Defendants filed an Answer noting, inter alia, that they appeared "without waiving any right or defense arising from Title III of [PROMESA]."

That same day, the district court granted Plaintiffs a preliminary injunction that allowed voters over sixty to vote early by mail.  Twelve days later, the court issued a permanent injunction.  On November 2, 2020, following the entry of final judgment, Plaintiffs moved for fees and costs under 42 U.S.C. § 1988, seeking approximately $67,680 in fees and $2,932 in costs.

The district court waited roughly three years, until December 26, 2023, to rule on the motion, ultimately awarding Plaintiffs $64,415 in attorneys' fees and no costs. On January 23, 2024, Defendants filed a motion for reconsideration, arguing for a downward revision of the award.

While that motion was pending, Defendants filed a "Notice of Injunction," in which they asserted that under the Confirmed Plan, Plaintiffs were barred from collecting the fee award. Defendants asserted that Plaintiffs' claim was a post-petition monetary award against Puerto Rico and implied that Plaintiffs failed to file proof of their claim before the administrative expense bar date. Defendants requested that the court "take notice of the injunction," which they said "stay[ed] the instant case and depriv[ed] [the district court] of jurisdiction." Prior to filing the Notice of Injunction, Defendants had not provided direct notice to Plaintiffs about the Confirmed Plan or the administrative expense bar date.

On July 31, 2024, the district court denied Defendants' "request to stay the collection of . . . attorneys['] fees." The court concluded that because this was not "a Title III case" but "a post-petition case unrelated to Puerto Rico's bankruptcy case," it was "not persuaded that the [C]onfirmed [P]lan's injunction on claims and administrative bar date applie[d]." Defendants timely appealed.

Defendants contend that the district court wrongly concluded that Plaintiffs' claim for fees was "unrelated to Puerto Rico's bankruptcy case" and thus not subject to discharge under the Confirmed Plan. Defendants' argument is straightforward and ultimately persuasive: the claim for fees runs against Puerto Rico; it arose after the Title III petition was filed but before the Confirmed Plan's Effective Date; Plaintiffs failed to file proof of their claim by the administrative expense bar date; and therefore, under the Confirmed Plan, Plaintiffs' claim is discharged and enjoined.

Plaintiffs do not dispute that their claim for fees is against Puerto Rico and that they did not file proof of their claim before the administrative expense bar date. Plaintiffs nonetheless offer four arguments to support the district court's conclusion that the fee award is exempt from discharge. First, they contend that Defendants waived the discharge argument by not raising it in a timely fashion before the district court. Second, they argue that their claim for fees did not "arise" until after the Confirmed Plan took effect and thus is not subject to discharge under the Plan. Third, they assert that even if their claim did arise before the Confirmed Plan took effect, the claim is an "obligation[] arising under [f]ederal police or regulatory laws" and is thereby exempt from discharge under 48 U.S.C. § 2164(h) of

PROMESA. Finally, they posit that because Defendants allegedly failed to provide them with adequate notice of the administrative expense bar date, their claim is not subject to discharge as a matter of due process. We address these contentions in the order presented, ultimately concluding that none is convincing.

## A.

Plaintiffs first claim that Defendants waived any argument that their fee award has been discharged. They assert that Defendants waited nearly two years, while the Confirmed Plan was in effect and the motion for fees was pending, to raise the discharge argument in a "Notice of Injunction." They add that Defendants not only waited to file their Notice until after the district court had granted Plaintiffs' motion for fees, but also until after Defendants themselves had filed a reconsideration motion contesting the fee award on the merits. Plaintiffs further contend that the Notice's discharge arguments were perfunctory and undeveloped. In support of their waiver contention, Plaintiffs cite several of this Court's cases deeming an argument waived that was not timely raised before the district court.

While raise-or-waive is the general rule in this circuit, there are circumstances here that preclude its application. Under 11 U.S.C. § 524(a)(1) and (2), which are incorporated into PROMESA, see 48 U.S.C. § 2161(a), a discharge "voids any judgment" and "operates as an injunction . . . whether

or not discharge of such debt is waived," 11 U.S.C. § 524(a)(1)-(2) (emphasis added). As the plain text of § 524(a) demonstrates, discharge applies "automatically" and independent of any action (or inaction) by the debtor; thus it cannot be waived. See 4 Collier on Bankruptcy ¶524.02 (16th ed. 2026); see also In re Gurrola, 328 B.R. 158, 165-70 (9th Cir. BAP 2005) (describing the history of § 524(a) to demonstrate that the provision renders discharge "an absolute, nonwaivable defense" as opposed to "an affirmative defense that could be lost if not raised"). Plaintiffs have provided no basis to disregard § 524(a)'s plain language precluding waiver of discharge. We therefore reject Plaintiffs' waiver argument.

**B.**

Plaintiffs next offer a timing argument. They contend that their claim for fees is nondischargeable because it arose after the Confirmed Plan took effect. As Plaintiffs note, the discharge provision applies specifically to claims that "arose, in whole or in part, prior to the Effective Date" of the Confirmed Plan. In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 38, 231 (emphasis added). While Plaintiffs do not dispute that the underlying constitutional violation, their corresponding § 1983 action, and the filing of their motion for fees all occurred more than a year before the Confirmed Plan's Effective Date, they argue that their claim for fees ultimately did not "arise" until the

- 10 -

district court granted their motion, which was almost two years after the Confirmed Plan's Effective Date. Plaintiffs assert that their claim is consequently "a post-Effective Date claim" and should not be "subject to the Title III [p]roceedings' claims resolution process."

Plaintiffs' argument is premised on an assertion that in bankruptcy, a claim against a debtor for fees arises only when the claim is reduced to judgment. Plaintiffs ground this proposition in § 1988's fee-shifting language, which provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Relying on this language, Plaintiffs contend that because a fee award under § 1988 is discretionary, a claim for fees does not arise until the court exercises its authority to order the award.

We disagree. For starters, under the Confirmed Plan and the Bankruptcy Code as incorporated by PROMESA, a claim is cognizable, and subject to discharge, regardless of whether it has been reduced to judgment. See In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 37–38, 89-90 (discharging "all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date," and expressly defining the term "claim" as "[a]ny right to payment or performance, whether or not such right is reduced to judgment");

- 11 -

see also 11 U.S.C. §§ 944(b)(1), 101(12), 101(5) (establishing that "the debtor is discharged from all debts as of the time when . . . the plan is confirmed," and defining the term "debt" as "liability on a claim," and the term "claim" as a "right to payment, whether or not such right is reduced to judgment").

Moreover, to determine when a claim arises in the specific circumstance of fee awards, we have traditionally looked, not to judgments, but the timing of the underlying violation or transaction for which the fees were incurred. See, e.g., In re Hemingway Transp., Inc., 954 F.2d 1, 7 (1st Cir. 1992) (looking to whether attorneys' fees were incurred for the purposes of the post-petition operation of the debtor); In re Munce's Superior Petroleum Prods., Inc., 736 F.3d 567, 568, 572 (1st Cir. 2013) (looking to whether the fines and attorneys' fees were "directly attributable to post-petition violations"); see also 5 Collier on Bankruptcy ¶553.03 ("[I]f the creditor incurs the attorney's fees [post-petition] in connection with exercising or protecting a [pre-petition] claim that included a right to recover attorney's fees, the fees will be [pre-petition] in nature . . . . [If] the claim for attorney's fees arises from the debtor's [post-petition] misconduct . . . the claim for the fees would be [post-petition] in nature rather than a [pre-petition] claim."); cf. In re Mammoth Mart, Inc., 536 F.2d 950, 955 (1st Cir. 1976) (looking to when the "debtor-in-possession's actions themselves . . . [gave] rise to a

- 12 -

legal liability" to determine when a claim arises in the analogous context of debtor misconduct).

Finally, we note that Plaintiffs' argument is at odds with the animating objectives of bankruptcy. Under Plaintiffs' theory, were a court to wait until after a plan of adjustment has taken effect to rule on a claim for fees, the claim would go unaddressed by the bankruptcy proceedings. Such an outcome would prevent the bankruptcy proceedings from achieving the "broadest possible relief in the bankruptcy court and [from] ensur[ing] that virtually all obligations to pay money [would] be amenable to treatment in bankruptcy." In re Hemingway Transp., Inc., 954 F.2d at 8 (citation modified); see also O'Loghlin v. Cnty. of Orange, 229 F.3d 871, 874 (9th Cir. 2000) (similar). Moreover, it would leave the reorganized debtor "saddle[d] . . . with significant and unexpected liabilities . . . hobbling from the start its prospects for a successful, long-term reorganization." Ellis, 11 F.4th at 237; see also Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." (citation modified)).

Here, the events for which the district court awarded Plaintiffs fees occurred well before the Confirmed Plan's Effective Date. That the district court, independent of any actions by the parties, waited almost two years after the Confirmed

- 13 -

Plan took effect to rule on the motion is not a basis for circumventing the Title III proceedings. To find otherwise would not just stray from precedent; it would also undermine the very purpose of the proceedings -- orderly resolution of a debtor's assets and successful reorganization. For these reasons, we reject Plaintiffs' timing argument.

### C.

Plaintiffs next assert that, even if their timing argument fails, their claim for attorneys' fees remains nondischargeable under 48 U.S.C. § 2164(h), which bars the discharge of all "obligations arising under [f]ederal police or regulatory laws." 48 U.S.C. § 2164(h). The provision reads as follows:

> This chapter may not be construed to permit the <u>discharge</u> of obligations arising under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions. This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties.

Id. (emphasis added).

To qualify for the statutory exception, Plaintiffs contend that their claim for attorneys' fees is a nondischargeable "obligation" that arises from their initial § 1983 action challenging Defendants' voting procedures for the 2020 general

- 14 -

election under the First and Fourteenth Amendments. However, rather than argue that the claim is an "obligation[] arising under" these Amendments, see 48 U.S.C. § 2164(h), Plaintiffs argue that their claim arises from § 1983, the authorizing statute that granted Plaintiffs a cause of action to bring their voting rights action, and § 1988, the corresponding fee-shifting statute. Specifically, Plaintiffs posit that the two statutes constitute "[f]ederal police or regulatory laws" under § 2164(h), citing the statutes' historical origins, the statutory scheme under which the laws are codified, and the fact that, at least in the case of § 1983, the statute has been relied on "to address various matters of public health or safety." We are not persuaded.

Section 2164(h)'s purpose is to prevent the debtor from using bankruptcy to avoid obligations required by federal police and regulatory laws. In this context, the term "police and regulatory laws" connotes federal legislation and regulation that create obligations to provide for public health and safety. See 48 U.S.C. § 2164(h) (citing as examples "laws relating to the environment, public health or safety"); Municipality of San Juan, 919 F.3d at 577 (citing "the Medicaid Act" as one example of such laws); see also Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996) (defining police powers more generally as the "latitude . . . to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons" and noting "the Federal

- 15 -

Government has played an increasingly significant role in the protection of the health of our people" (quoting Metro. Life Ins. v. Massachusetts, 471 U.S. 724, 756 (1985))).

But § 1983 and § 1988 do not create substantive rights or obligations. See, e.g., Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006); Maine v. Thiboutot, 448 U.S. 1, 11 (1980) (describing § 1988 as "part of the § 1983 remedy"). Section 1983 creates a cause of action for private parties to challenge the deprivation of federal rights by persons operating under the color of state law. See 42 U.S.C. § 1983. And § 1988 enables a prevailing plaintiff in such an action to collect fees subject to the discretion of the court. See id. § 1988. In this sense, § 1983 and § 1988 are not "[f]ederal police or regulatory laws" under § 2164(h) but merely authorizing statutes -- vehicles for enforcing a state actor's compliance with federal law, but not the source of obligations with which the state actor must comply. Plaintiffs' focus on § 1983 and § 1988 is therefore misplaced. In so relying, Plaintiffs have failed to establish a valid basis for finding their claim nondischargeable under § 2164(h).

**D.**

Finally, we address Plaintiffs' argument that they should be exempt from discharge because Defendants failed to provide them with constitutionally adequate notice of the administrative expense bar date. Specifically, Plaintiffs argue

- 16 -

that because they were "known" to the debtor, as opposed to "unknown" or conjectural, Defendants should have, as a matter of due process, directly notified them of the administrative expense bar date.[2] Plaintiffs identify two grounds for this contention. First, they argue that this conclusion follows from In re Arch Wireless, Inc., 534 F.3d 76, 79 (1st Cir. 2008). Second, they argue that the Federal Rules of Bankruptcy Procedure, which were incorporated into PROMESA, see 48 U.S.C. § 2170, require such notice. We consider these arguments in turn.

In Arch Wireless, this Court assessed facts similar to those presented here. That case involved a Chapter 11 corporate bankruptcy, in which a creditor held a "pre-confirmation" claim but had not filed an appearance in the bankruptcy proceedings. 534 F.3d at 79-80. The debtor meanwhile had published notice of the bankruptcy proceedings in major national newspapers but had not provided the creditor with formal notice "of the bar date, the confirmation hearing, or the contents of the confirmation plan." Id. at 79-80, 82. The Court considered whether, in the context of a Chapter 11 corporate bankruptcy, a debtor's failure to provide

---

[2] We note that in making this argument, Plaintiffs do not dispute that their claim for fees and costs qualifies as an administrative expense under 11 U.S.C. § 503(a).

- 17 -

direct notice of "specific key dates" to a "known" creditor exempts the creditor's claim from discharge.[3]  Id. at 82-87.

The relevant statutory provisions at issue in Arch Wireless did not specify the type of notice debtors must provide. See 534 F.3d at 82-83 ("The discharge injunction provisions in the Code are written unequivocally . . . without reference to the notice provided to the claimants." (citing 11 U.S.C. §§ 524, 1141(d)).  Notwithstanding the statutory silence, the Court held that the creditor did not receive constitutionally adequate notice of key dates in the proceedings and, as a result, the creditor's claim was not discharged.  Id. at 83-84, 87.  The Court explained that it was not enough for the creditor to have "general awareness of a pending Chapter 11 reorganization proceeding."  Id. at 87. To "satisfy the requirements of due process and render the discharge injunction applicable to the creditor's claims," the debtor was required to provide known creditors with direct notice of the key events in the bankruptcy proceedings.  Id. at 83-84, 87.

---

[3]     The Court defined "known" creditors as the subset of creditors whose claims are "reasonably ascertainable" to a debtor. Arch Wireless, 534 F.3d at 81 (quoting Tulsa Prof'l Collection Servs. Inc. v. Pope, 485 U.S. 478, 490 (1988)).   It defined "unknown" creditors as the remaining creditors whose claims are "conjectural or future [oriented]."  Id. at 80 (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 317 (1950)).  The Court noted that when a creditor is "unknown," general publication notice satisfies due process.  Id.

Plaintiffs argue that Arch Wireless controls here. They contend that like the creditor in Arch Wireless, they are known claimants and, as a matter of due process, Defendants were required to provide them direct notice of the key dates in the Title III proceedings, including the administrative expense bar date. Because they did not receive such notice, they argue, their claim for fees should not be discharged.

Core to Plaintiffs' thesis is a presumption that once a claimant is deemed "known," heightened notice requirements automatically follow. This contention, however, overreads Arch Wireless. As noted above, that decision held that in the context of a Chapter 11 corporate bankruptcy, where there is no statutory notice provision, a debtor must provide a known creditor with formal notice of specific deadlines as a matter of due process. See 534 F.3d at 83-84, 87. But the Court's analysis did not end there. The decision also made clear that "the contours of [the] constitutional due process analysis" are "closely tied to the statutory framework," id. at 84-85, 87, and that "[notice] requirements may vary as between creditors" under different bankruptcy provisions so long as "the statute itself puts creditors on notice of this variance," id. at 86. As the Court explained, "[t]he statutory notice requirement . . . informs the reasonable expectations of creditors," and a "creditor's 'right to assume'

that a particular level of notice will be given is based upon the notice provisions in the applicable statute." Id. at 84-85, 87.

Unlike the statutory discharge provisions at issue in Arch Wireless, which were written "without reference to the notice provided to the claimants," 534 F.3d at 82, the statutory provision governing discharge here, 11 U.S.C. § 944, includes an express notice provision. Section 944, which was incorporated into PROMESA under 48 U.S.C. § 2161(a), discharges a debtor from all debts "owed to an entity" unless the entity "had neither notice nor actual knowledge of the case" before confirmation of the plan. 11 U.S.C. § 944(b), (c)(2) (emphasis added).

We understand the phrase "of the case" as used in § 944(c)(2) to refer to the bankruptcy proceedings overall. See H.R. Rep. No. 94-686, 94th Cong., 1st Sess. 34 (1975) ("[I]f [a creditor] knew of either the petition or the plan, either through timely notice from the court or the petitioner, or through his actual knowledge, then his claim is discharged. Otherwise it is not."); see also Arch Wireless, 534 F.3d at 86 (interpreting the words "knowledge of the case" to mean "general knowledge of the proceedings" (emphasis added)). Section 944(c)(2) thus establishes that once a claimant receives notice or gains actual knowledge of the bankruptcy proceedings, the burden of inquiry shifts to the claimant to identify and comply with specific filing

- 20 -

deadlines. See Arch Wireless, 534 F.3d at 86 (describing the clause as instituting a "burden-shift" to the claimant).

In arguing that they received constitutionally deficient notice, Plaintiffs make no attempt to square Arch Wireless's instruction that "[t]he statutory notice requirement shapes the contours of [the] constitutional due process analysis," id. at 84-85, with the text of § 944(c)(2). Nor do they acknowledge Arch Wireless's analysis of a different bankruptcy provision, 11 U.S.C. § 523(a)(3), that shares the same "notice or actual knowledge of the case" language as § 944(c)(2). See id. at 86. Rather than find § 523(a)(3) constitutionally inadequate, Arch Wireless made clear that "because the statute itself warns that 'actual knowledge of the case' will be enough to permit the discharge injunction to operate against their claims," creditors with such knowledge "do not have a 'right to assume'" anything more. Id. (emphasis added) (quoting In re Medaglia, 52 F.3d 451, 456-57 (2d Cir. 1995)). Indeed, Arch Wireless specifically described the language of § 523(a)(3) as working a "statutory burden-shift" that directs the creditor "to actively participate once he [or she] has general knowledge of the [bankruptcy] proceedings." Id. We see no reason to adopt a different analysis in the present case.

Here, Plaintiffs had actual knowledge of the Title III proceedings. Defendants specifically referenced the proceedings in their Answer to Plaintiffs' Complaint as well as in other case

filings.  Under § 944, as well as our reasoning in <u>Arch Wireless</u>, it thus follows that Plaintiffs did not "have the 'right to assume' that" they would receive formal notice of the bar date.  <u>Arch Wireless</u>, 534 F.3d at 86 (quoting <u>In re Medaglia</u>, 52 F.3d at 457–58).  To the contrary, they had a responsibility to "actively participate" in the proceedings by identifying the bar date for themselves.  <u>Id.</u>

To the extent Plaintiffs address § 944's notice provision, they do not dispute the provision's meaning or its application in this case.  They nonetheless make two arguments as to why the provision is not dispositive.  Neither is persuasive.

First, they contend that while "a creditor who had neither notice nor actual knowledge [of the case] may be exempted under § 944(c) . . . exemptions [to discharge] are not <u>limited</u> to creditors who had neither notice nor actual knowledge [of the case]."  Put differently, just because § 944(c)(2) sets out one particular form of notice owed to the claimant, this does not preclude a court from imposing other notice requirements.  We disagree.

Plaintiffs are essentially asking for a more rigorous notice requirement than Congress saw fit to provide.  This is wrong in two respects.  To start, generally where "Congress has enumerated a set of express exceptions," we do not assume that "Congress intended to make . . . other exceptions than those

- 22 -

specified." Sony BMG Music Ent. v. Tenenbaum, 660 F.3d 487, 499 (1st Cir. 2011); see also Hillman v. Maretta, 569 U.S. 483, 496 (2013) (similar).

Apart from that, "[i]t is an 'elementary canon of construction that a statute should [not] be interpreted so as . . . to render one part inoperative.'" South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 510 n.22 (1986) (quoting Colautti v. Franklin, 439 U.S. 379, 392 (1979)). Here, were we to accept Plaintiffs' proposed notice requirement, it would in certain instances nullify § 944(c)(2). Consider an example: a known claimant has notice or actual knowledge of the overall bankruptcy proceedings consistent with § 944(c)(2) but has not received formal notice of the bar date, as Plaintiffs contend is required. Under the plain language of § 944(c)(2), the claim would be discharged. But not so under Plaintiffs' proposed notice requirement. Applying Plaintiffs' unenumerated notice requirement would thus require courts, in certain instances, to revive claims that Congress expressly wanted discharged.

Ultimately, "our task [is] to enforce the statute as Congress wrote it" and not "in a way that would frustrate Congress's unmistakable purpose." Aguilar v. U.S. Immigr. & Customs Enf't, 510 F.3d 1, 10 (1st Cir. 2007). Here, Congress has established a clear exception to discharge under § 944(c)(2) -- lack of notice or actual knowledge of the

- 23 -

bankruptcy case. Plaintiffs, for their part, have identified no basis for reading additional exceptions into the statute. For these reasons, we reject Plaintiff's proposed interpretation of § 944.

Plaintiffs separately attempt to bypass the plain text of § 944(c)(2) by arguing that it "is not the sole source of authority on the notice requirements for a debtor under PROMESA." Plaintiffs assert that the Federal Rules of Bankruptcy Procedure, which are incorporated into PROMESA under 48 U.S.C. § 2170, put "the burden on the debtor to list its known creditors and personally notify them of specific key dates in the proceeding." They further note that Arch Wireless relied on the Rules as a separate source of authority.

Plaintiffs are correct that the Rules require that known creditors receive formal notice of specific events in the bankruptcy proceedings. See generally Fed. R. Bankr. P. 2002(a)(7), 2002(f), 3017(d); see also Arch Wireless, 534 F.3d at 82. However, as Arch Wireless notes, the "Rules themselves do not provide an exception to the discharge injunction when notice rules are violated." 534 F.3d at 83. Moreover, to the extent Arch Wireless relied on the Rules as a source of authority, it did so in lieu of any clear statutory notice requirement. See id. at 84. By contrast, here, as discussed above, there is a statutory notice requirement in § 944(c)(2) of the Bankruptcy Code. See 11 U.S.C.

§ 944(c)(2). Insofar as this statutory notice requirement under the Code differs from the notice requirements set forth under the Rules, such conflict must be resolved to favor the Code. See, e.g., In re Edmonston, 107 F.3d 74, 76 n.2 (1st Cir. 1997); In re Smith, 999 F.3d 452, 456 (6th Cir. 2021); In re Jastrem, 253 F.3d 438, 441-42 (9th Cir. 2001). We therefore reject Plaintiffs' contention that the Rules serve as a separate legal ground upon which to impose a heightened notice requirement.

In sum, § 944(c)(2) specifies the "particular level of notice" to which a claimant is entitled. Arch Wireless, 534 F.3d at 87. The provision establishes that once a claimant has "notice" or "actual knowledge of the" bankruptcy proceedings, its claim may be discharged under the Confirmed Plan. 11 U.S.C. § 944(c)(2). Here, Plaintiffs had such knowledge. We therefore reject Plaintiffs' contention that the fee award should be exempted from discharge on the ground that Defendants failed to provide direct notice of the administrative expense bar date.[4]

---

[4] Because Plaintiffs' claim is discharged, we do not address Defendants' contention that the district court erred in calculating Plaintiffs' attorneys' fees. Likewise, we requested supplemental briefing on whether Plaintiffs' motion for attorneys' fees and costs was void on the ground that it was filed in violation of the automatic stay that was instituted following the Title III petition. See 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. §§ 362(a) and 922(a)). Defendants contend that Plaintiffs' motion was in express violation of the automatic stay and that the motion and any relief awarded are void. As our disposition resolves this matter in favor of Defendants, we bypass whether the motion for fees and costs was void because of the automatic stay. See

## III.

To conclude, Plaintiffs' claim for attorneys' fees under § 1988 is a post-petition claim against Puerto Rico. Despite having actual knowledge of the Title III proceedings, Plaintiffs do not dispute that they failed to file proof of their claim by the administrative expense bar date. Pursuant to the Confirmed Plan and § 944 of the Bankruptcy Code, Plaintiffs' claim is therefore discharged. On that basis, we **reverse** the district court's order denying the application of the discharge injunction to the fee award.[5]

---

Díaz-Báez v. Alicea-Vasallo, 22 F.4th 11, 17 n.3 (1st Cir. 2021); Johansen v. Liberty Mut. Grp., 118 F.4th 142, 148 (1st Cir. 2024).

[5]   The Bankruptcy Code, as adopted by PROMESA, permits Plaintiffs to file a belated "request for payment of an administrative expense" in the Title III proceedings and ask the Title III Court to accept the late filing "for cause." 11 U.S.C. § 503(a); see also Ellis, 11 F.4th at 239 n.12. We offer no view on how any such filing should be resolved.